Jessie Joe HOCKADAY, Plaintiff,

v.

TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, PARDONS AND PAROLES
DIVISION, Defendant.

Civil Action No. H–94–3619.

United States District Court,
S.D. Texas,
Houston Division.

Jan. 31, 1996.

Steven R. Rosen, Houston, Texas, for Plaintiff.

Chris Lemens, Office of the Attorney General, Austin, Texas, for Defendant.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendant Texas Department of Criminal Justice, Pardons and Paroles Division's ("TDCJ") motion for summary judgment (# 27). Defendant seeks summary judgment on Jessie Joe Hockaday's ("Hockaday") claims of violation of TEX.GOV'T CODE ANN. § 554, the "Whistleblower Act," violation of her civil rights, breach of contract, gross negligence, and intentional infliction of emotional distress.

Having reviewed the motion, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that TDCJ's motion for summary judgment should be granted.

## I. *Background*

On July 1, 1991, Hockaday was hired by TDCJ as a parole officer at its Houston I District Parole Office. One of Hockaday's supervisors was Veronica S. Ballard ("Ballard"). Ballard's immediate supervisor was Melinda Bozarth ("Bozarth"), the interim division director for TDCJ.

On February 11, 1994, TDCJ sent Hockaday notification that there would be a hearing to consider allegations that Hockaday had violated TDCJ Personnel Directive PD–22, Rule 33, which prohibits the release of confidential information. On February 23, 1994, Ballard conducted a hearing, after which she wrote an interoffice memorandum summarizing the evidence presented and recommending that Bozarth terminate Hockaday. Hockaday received notice of her termination on April 21, 1994. Hockaday filed an employee grievance, which Bozarth received on May 16, 1994. Soon afterward, a grievance hearing was held, and Hockaday's grievance was denied on June 21, 1994. Hockaday received notice of this decision on June 24, 1994. On September 22, 1994, Hockaday filed suit in the 11th Judicial District Court of Harris County, Texas. Bozarth, who is no longer a party to this action, removed the case to this court.

Hockaday alleges that, during the course of her employment with TDCJ, she had become involved in a variety of different victims' rights groups, including Parents of Murdered Children, Mothers Against Drunk Driving, and Zero Accidental Killings. Hockaday asserts that C.A. Pressler, another one of her supervisors, began pressuring all parole officers in 1992 to "... overlook violations, except assaultive offenses, to the end of not placing felons in the Harris County Jail." Hockaday further claims that the Pre–Revocation Task Unit was formed in 1992 to "... remove felons from ... [jail] and place them in society." Hockaday criticized these actions in memoranda and meetings with her

supervisors. She also alleged and reported various other incidents, such as perjury by a parole officer, the practice of inducing mentally ill parolees to waive hearings without advice of counsel, fabrications by parole officers on work verification sheets, and a parole officer selling drugs to parolees. She later contacted an internal affairs division officer, who made a report. According to Hockaday, no corrective action was taken by TDCJ.

Hockaday alleges that she received a call from Paula Reyes ("Reyes") of Zero Accidental Killings in November 1993. Apparently, a parolee had been suspected of molesting a child, and Reyes wanted to know what prior offenses the parolee had committed. Hockaday asserts that she told Reyes to contact the parole officer in charge of the parolee or the parole officer's supervisor. After being told that these two options had been attempted, Hockaday released "certain information." This conversation was tape recorded. Later, Hockaday was accused of releasing "confidential information" in violation of a TDCJ written policy to Reyes and others, including Andy Kahan, Houston Mayor Bob Lanier's victims' rights advocate, and Mike McMahan, the purported leader of Victims of Crime Alliance. Hockaday maintains that Reyes was coerced by employees of TDCJ to "set up" Hockaday for this policy violation due to the complaints she had made to her supervisors.

## II. *Analysis*

### A. *The Applicable Standard*

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of

material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams,* 836 F.2d 958, 960 (5th Cir.1988). Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–15. *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The controverted evidence must be viewed in the light most favorable to the non-movant and all reasonable doubts must be resolved against the moving party. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990); *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552. "In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.

### B. *The Whistleblower Act*

Hockaday alleges that TDCJ violated the Whistleblower Act when it terminated her employment. She contends that by discharging her, TDCJ retaliated against her for voicing concerns about certain actions taken by TDCJ officials. At the time of her termination, the Whistleblower Act, TEX.GOV'T CODE ANN. § 554.002, provided:

> A state agency or local government may not suspend or terminate the employment of or discriminate against a public employee who in good faith reports a violation of law to an appropriate law enforcement authority.

■ The Whistleblower Act is remedial in nature and should be liberally construed. *Davis v. Ector County, Tex.,* 40 F.3d 777, 785 (5th Cir.1994); *Stinnett v. Williamson County Sheriff's Dept.,* 858 S.W.2d 573, 575 (Tex. App.—Austin 1993, writ denied); *Castaneda v. Texas Dept. of Agric.,* 831 S.W.2d 501, 503 (Tex.App.—Corpus Christi 1992, writ denied). Traditionally, the Whistleblower Act has been applied to public employees who are fired in retaliation for reporting their employer's violations of law that are detrimental to the public good or society in general. *Stinnett,* 858 S.W.2d at 575. It is designed to enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing. *Castaneda,* 831 S.W.2d at 503. Here, Hockaday contends that she was "set up" by TDCJ essentially because she had criticized and reported her employer's method of alleviating crowded jail cells.

■ In response, TDCJ asserts that Hockaday's claim is barred by the statute of limitations applicable to the Whistleblower Act. TDCJ claims that Hockaday failed to comply with the ninety-day limitation period set forth in TEX.GOV'T CODE ANN. § 554.005, which states:

> Except as provided by Section 554.006, a public employee who seeks relief under this chapter must sue not later than the 90th day after the date on which the alleged violation of this chapter: (1) occurred; or (2) was discovered by the employee through reasonable diligence.

TDCJ reasons that since Hockaday "... knew she had been fired by April 28 ... she would have had to file suit by July 27, 1994, at the latest. She filed suit ... on September 22, 1994." Hockaday, however, argues that TDCJ ignored the provisions of TEX. GOV'T CODE ANN. § 554.006, which tolls the running of the statute of limitations while grievance or appeals procedures are pending. During the time period at issue, § 554.006 provided:

> (a) An employee of a local government must exhaust that government's grievance or appeal procedures relating to suspension or termination of employment or un-

lawful discrimination before suing under this chapter.

(b) The employee must invoke the grievance or appeal procedures not later than the 90th day after the date on which the alleged violation of this chapter:

(1) occurred; or

(2) was discovered by the employee through reasonable diligence.

(c) Time used by the employee in exhausting the grievance or appeal procedures is excluded from the period established by Section 554.005.

(d) This section does not apply if a final decision is not rendered before the 31st day after the date on which the employee initiated the grievance or appeal.

Contrary to Hockaday's assertions, § 554.006 is not applicable in this situation. First, Hockaday was not an employee of a local government, but of a state agency, and therefore, was not included under the express terms of § 554.006 in effect at the time. *See* TEX.GOV'T CODE ANN. §§ 493.001, 493.002(a)(3). Second, because the final decision on Hockaday's grievance was not rendered until June 21, 1994, more than thirty-one days after she initiated the grievance, § 544.006 was not applicable in any event. *See* TEX.GOV'T CODE ANN. § 554.006(d). At the time, exhaustion of internal remedies was not a prerequisite for bringing suit if not completed before the thirty-first day. *Turner v. Richardson Indep. Sch. Dist.*, 885 S.W.2d 553, 560 (Tex.App.—Dallas 1994, writ denied). Moreover, if internal remedies had been completed within the requisite time period, the limitations period would have been extended to no more than 120 days after Hockaday learned of her termination, making the instant action untimely, as well. *See id.* Instead, it was incumbent on Hockaday to file suit under § 554.005 not later than ninety days after she received notice of her termination, which she failed to do.

Hence, Hockaday's claim based on the Whistleblower Act is barred by the statute of limitations.

## C. *Civil Rights Claims*

Hockaday asserts that TDCJ violated Texas and federal law with respect to her right to be free from entrapment, intimidation, and unauthorized electronic surveillance. She further contends that all actions of TDCJ were committed under color of state law, statute, ordinance, and/or regulation to deprive her of the rights, privileges, and immunities secured to her by the law and constitution of the State of Texas.

While not entirely clear, it appears that Hockaday is attempting to state a claim under 42 U.S.C. § 1983, which provides:

Every person who, under color of ... [state law] subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

■ The Eleventh Amendment to the United States Constitution generally divests federal courts of jurisdiction to entertain suits directed against states. *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304, 110 S.Ct. 1868, 1871, 109 L.Ed.2d 264 (1990); *Green v. State Bar of Tex.*, 27 F.3d 1083, 1087 (5th Cir.1994). TDCJ is a division of a state agency—the Texas Department of Criminal Justice. *See* TEX.GOV'T CODE ANN. § 493.002(a)(3). Under TEX.GOV'T CODE ANN. § 493.001:

The department is the state agency with primary responsibility for:

(1) the confinement, supervision, and rehabilitation of felons;

(2) the development of a system of state and local punishment, supervision, and rehabilitation programs and facilities; and

(3) the reintegration of felons into society after release from confinement.

TDCJ asserts, and Hockaday concedes, that individual states, their departments and agencies, and their officials acting in their official capacities are not deemed "persons" subject to suit under 42 U.S.C. § 1983. *See id; Stem v. Ahearn*, 908 F.2d 1, 4 (5th Cir.

1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). Because it is part of a state agency, TDCJ cannot be held liable under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64, 71, 109 S.Ct. 2304, 2308–2309, 2312, 105 L.Ed.2d 45 (1989); *see also Green,* 27 F.3d at 1087–88; *Laje v. R.E. Thomason Gen. Hosp.,* 665 F.2d 724, 726 n. 2 (5th Cir.1982).

■ Hockaday also appears to be asserting a claim under the Texas Constitution. Generally, no claim for damages may be brought for violation of the Texas Constitution because there is neither a statutory cause of action similar to that created by 42 U.S.C. § 1983 nor an implied cause of action like that recognized in *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). *See Gillum v. City of Kerrville,* 3 F.3d 117, 121–22 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 881, 127 L.Ed.2d 76 (1994); *City of Beaumont v. Bouillion,* 896 S.W.2d 143, 146–150 (Tex. 1995); *Jones v. City of Stephenville,* 896 S.W.2d 574, 577–78 (Tex.App.—Eastland 1995, no writ); *Harris County v. Going,* 896 S.W.2d 305, 308 (Tex.App.—Houston [1st Dist.] 1995, writ denied); *Vincent v. West Tex. State Univ.,* 895 S.W.2d 469, 475 (Tex. App.—Amarillo 1995, n.w.h.). Stated simply, "[t]here is no state constitutional tort." *Gillum,* 3 F.3d at 122 (quoting *Bagg v. University of Texas Med. Branch,* 726 S.W.2d 582, 584 n. 1 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.)). In addition, Texas does not recognize a common law cause of action for damages to enforce constitutional rights. *Bouillion,* 896 S.W.2d at 150. Hence, Hockaday has failed to state a viable claim based on the Texas Constitution.

■ Hockaday belatedly claims in her response to TDCJ's motion for summary judgment that her pleadings could be construed to include claims under the Texas Commission on Human Rights Act, Tex.Lab. Code Ann. § 21.001 *et seq.,* the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* 42 U.S.C. § 1981, and 42 U.S.C. § 1985. Assuming *arguendo* that her complaint could be so construed, Hockaday has

no cognizable cause of action under any of these statutes. First, there is no indication that she has exhausted the administrative remedies which are a jurisdictional prerequisite for bringing suit under either Title VII or the Texas Commission on Human Rights Act. *See* 42 U.S.C. § 2000e–5(e)(1); 42 U.S.C. § 2000e–5(f)(1); Tex.Lab.Code Ann. § 21.201; Tex.Lab.Code Ann. § 21.254; *National Ass'n of Gov't Employees v. City Public Serv. Bd.,* 40 F.3d 698, 711 (5th Cir.1994); *Clark v. Kraft Foods, Inc.,* 18 F.3d 1278, 1279 (5th Cir.1994); *Tolbert v. United States,* 916 F.2d 245, 247–48 (5th Cir.1990); *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 485 (Tex.1991); *Central Power & Light Co. v. Caballero,* 872 S.W.2d 6, 7 (Tex.App.—San Antonio 1994, writ denied); *Ridgway's, Inc. v. Payne,* 853 S.W.2d 659, 663 (Tex. App— Houston [14th Dist.] 1993, no writ); *Benavides v. Moore,* 848 S.W.2d 190, 196 (Tex. App.—Corpus Christi 1992, writ denied); *Brammer v. Martinaire, Inc.,* 838 S.W.2d 844, 846 (Tex.App.—Amarillo 1992, no writ). Moreover, 42 U.S.C. § 1981 addresses intentional discrimination based on race or color, but Hockaday's complaint is devoid of any mention of such discrimination. *See Daigle v. Gulf State Util. Co.,* 794 F.2d 974, 980 (5th Cir.), *cert. denied,* 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 704 (1986); *Adams v. McDougal,* 695 F.2d 104, 108 (5th Cir.1983); *White v. Washington Pub. Power Supply Sys.,* 692 F.2d 1286, 1290 (9th Cir.1982). Hockaday, likewise, asserts no viable claim under 42 U.S.C. § 1985, as it, too, applies only to racial or other class-based discrimination. *See Hilliard v. Ferguson,* 30 F.3d 649, 653 (5th Cir.1994); *Green,* 27 F.3d at 1088 n. 8; *Daigle,* 794 F.2d at 978–80. In addition, TDCJ and its employees constitute a single legal entity which is incapable of conspiring with itself. *See Hilliard,* 30 F.3d at 653; *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist.,* 926 F.2d 505, 509–10 (6th Cir.), *cert. denied,* 501 U.S. 1261, 111 S.Ct. 2917, 115 L.Ed.2d 1080 (1991).

Therefore, summary judgment is proper as to Hockaday's civil rights claims.

### D. *Breach of Contract*

Hockaday alleges that TDCJ breached her employment contract when it discharged her.

Under well-established Texas law, in the absence of a contractual or statutory restriction, an employment relationship is terminable at the will of either party, with or without cause. *Hopkins v. Stice*, 916 F.2d 1029, 1031 (5th Cir.1990); *Christian v. McKaskle*, 649 F.Supp. 1475, 1477 (S.D.Tex. 1986); *Schroeder*, 813 S.W.2d at 489; *Winters v. Houston Chronicle Pub. Co.*, 795 S.W.2d 723, 723–24 (Tex.1990); *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 734 (Tex.1985); *East Line & R. R.R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99, 102 (1888). One "very narrow" exception exists which "covers only the discharge of an employee for the sole reason that the employee refused to perform an illegal act." *Sabine Pilot Serv., Inc.*, 687 S.W.2d at 735. To be actionable, the illegal acts must carry criminal penalties. *Winters*, 795 S.W.2d at 724; *Sabine Pilot Serv., Inc.*, 687 S.W.2d at 735; *Hancock v. Express One Int'l, Inc.*, 800 S.W.2d 634, 636 (Tex.App.—Dallas 1990, writ denied).

TDCJ contends that it never entered into a written contract with Hockaday. In connection with its motion for summary judgment, TDCJ supplied an affidavit of the Assistant Director of Human Resources and Staff Development for TDCJ stating that TDCJ did not offer written employment contracts to parole officers on the date Hockaday was hired or any date thereafter. He also states that he has reviewed Hockaday's personnel file, which would contain an employment contract if it existed, but he found no such contract. In contrast, Hockaday asserts that upon acceptance of her position she did, in fact, enter into a written agreement with TDCJ, which imposes restrictions on the disciplinary actions TDCJ could take against her.

Hockaday, however, fails to produce any summary judgment evidence in support of her contention. It is well established that allegations contained in pleadings are not considered competent summary judgment evidence. *See Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15; *Williams v. Weber Management Serv.*, 839 F.2d 1039, 1041 (5th Cir.1987); *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 79–80 (5th Cir.1987); *Russell v. Harrison*, 736 F.2d 283, 287 (5th Cir.1984). It is likewise well settled that arguments set forth in a brief in response to a motion for summary judgment, unsupported by affidavits, deposition testimony, or other adequate summary judgment evidence, are insufficient to raise genuine issues of material fact to defeat a properly supported motion for summary judgment. *See Schroeder v. Copley Newspaper*, 879 F.2d 266, 271 (7th Cir.1989); *Helmich v. Kennedy*, 796 F.2d 1441, 1443 (11th Cir.1986); *see also Netto v. Amtrak*, 863 F.2d 1210, 1216 (5th Cir.1989). Instead, it was incumbent on Hockaday either to supply the contract or to provide an affidavit or other competent summary judgment evidence describing the relevant provisions of the contract. Under Texas law, an employee handbook does not constitute an employment contract and may not impose by implication a contractual restriction on an employer of at-will employees. *Bowser v. McDonald's Corp.*, 714 F.Supp. 839, 842 (S.D.Tex.1989); *Benoit v. Polysar Gulf Coast, Inc.*, 728 S.W.2d 403, 407 (Tex.App.—Beaumont 1987, writ ref'd n.r.e.); *Webber v. M.W. Kellogg Co.*, 720 S.W.2d 124, 128 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Hockaday's conclusory assertions and vague allegations are simply inadequate to satisfy her burden to set forth specific facts to counter TDCJ's summary judgment evidence. *See Lechuga v. Southern Pac. Transp. Co.*, 949 F.2d 790, 798 (5th Cir.1992); *Miller v. GTE Corp.*, 788 F.Supp. 312, 315 (S.D.Tex.1991); *Bowser*, 714 F.Supp. at 843.

Consequently, summary judgment is warranted on Hockaday's breach of contract claim.

### E. *Gross Negligence*

Hockaday alleges that TDCJ acted with gross negligence when it terminated her employment.

TDCJ asserts that it is immune from liability for gross negligence. Under the doctrine of sovereign immunity, the state is immune from suit without its consent even though there is no dispute regarding the state's liability. *Missouri Pac. R.R. v. Brownsville Navigation Dist.*, 453 S.W.2d 812, 813 (Tex.1970). Sovereign immunity

**1447**

bars a suit against the state unless it has expressly given its consent to be sued. *Id.* at 814. The state also has immunity from liability even though it has consented to be sued. *Id.* at 813. Hence, the state generally is not liable for the acts of public servants. *Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 298 (Tex.1976). Texas common law has long recognized that the State of Texas and its departments and agencies are entitled to sovereign immunity from liability. *See, e.g., Dillard v. Austin Indep. Sch. Dist.,* 806 S.W.2d 589, 592 (Tex.App.—Austin 1991, writ denied).

In certain situations, this immunity may be waived, as in the Texas Tort Claims Act. *See* TEX.CIV.PRAC. & REM.CODE § 101.021. The Texas Tort Claims Act, however, does not waive sovereign immunity from liability for gross, as distinguished from simple, negligence. *Gay v. State,* 730 S.W.2d 154, 158 (Tex.App.—Amarillo 1987, no writ). Moreover, the Texas Tort Claims Act waives sovereign immunity from liability only for "personal injury and death," not for wrongful discharge. *See* TEX.CIV.PRAC. & REM.CODE § 101.021(2). Hence, Hockaday's gross negligence claims are barred by the doctrine of sovereign immunity.

In any event, Hockaday has failed to assert viable claims of gross negligence. The Texas Supreme Court recently clarified the test for gross negligence: (1) viewed objectively from the standpoint of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 21–22 (Tex.1994). Under the court's analysis, the "extreme degree of risk" component is a "threshold significantly higher than the objective 'reasonable person' test for negligence." *Id.* at 22. The "extreme risk" prong is not satisfied merely by a remote possibility of injury, or even a high probability of minor harm. *Id.* Instead, the defendant's conduct must be unjustifiable and likely to cause serious injury. *Id.* The

likelihood of serious injury is determined by examining the events and circumstances from the viewpoint of the defendant at the time the events occurred, without viewing matters in hindsight. *Id.* at 23.

In the instant case, assuming *arguendo* that TDCJ had wrongfully discharged Hockaday, this is not the type of action likely to cause "serious harm" as required under *Moriel. Id.* at 22–23; *see Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986). The only foreseeable harm from the termination of Hockaday's employment was the loss of her pay and benefits until she secured another job. While this may qualify as harm, the magnitude of the harm is not sufficiently serious to satisfy the "extreme risk" component required for a finding of gross negligence.

Thus, TDCJ is entitled to summary judgment on Hockaday's gross negligence claim.

F. *Intentional Infliction of Emotional Distress.*

Hockaday also asserts that TDCJ is liable for intentional infliction of emotional distress.

To prevail on her claim of intentional infliction of emotional distress, Hockaday must establish: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused her emotional distress; and (4) the emotional distress suffered by her was severe. *MacArthur v. University of Tex. Health Ctr.,* 45 F.3d 890, 898 (5th Cir.1995); *McKethan v. Texas Farm Bureau,* 996 F.2d 734, 742 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994); *Ugalde v. McKenzie Asphalt Co.,* 990 F.2d 239, 243 (5th Cir.1993); *Ramirez v. Allright Parking El Paso, Inc.,* 970 F.2d 1372, 1375 (5th Cir.1992); *Johnson v. Merrell Dow Pharmaceuticals, Inc.,* 965 F.2d 31, 33 (5th Cir.1992); *Dean v. Ford Motor Credit Co.,* 885 F.2d 300, 306 (5th Cir.1989); *Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993).

While "extreme and outrageous," as used in the second element of this standard, is an amorphous phrase that escapes precise

definition, there appears to be a consensus that conduct is "outrageous" if it is "atrocious" and surpasses "all bounds of decency," such that it is "utterly intolerable in a civilized community." *See MacArthur,* 45 F.3d at 898; *Ugalde,* 990 F.2d at 243; *Johnson,* 965 F.2d at 33; *Dean,* 885 F.2d at 306; *Wornick,* 856 S.W.2d at 734. In *Dean,* the Fifth Circuit (citing RESTATEMENT (SECOND) OF TORTS § 46, comment d (1965)) stated:

> [L]iability for [outrageous] conduct has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.... Generally, the case is one in which a recitation of the facts to an average member of the community would lead him to exclaim, "Outrageous."

885 F.2d at 306. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Ugalde,* 990 F.2d at 243; *Johnson,* 965 F.2d at 33; *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1143 (5th Cir.1991). There is no occasion for the law to intervene in every case where someone's feelings are hurt. *Id.*

■ Specifically, in the employment context, the Fifth Circuit, applying Texas law, has repeatedly stated that a claim for intentional infliction of emotional distress will not lie for "mere employment disputes." *MacArthur,* 45 F.3d at 898; *Johnson,* 965 F.2d at 33. The courts recognize that in order to manage its business properly, an employer must be able to supervise, review, criticize, demote, transfer, and discipline employees. *Id.* at 34; *Wilson,* 939 F.2d at 1143. Even conduct which may be illegal in an employment setting may not be the sort of behavior that constitutes "extreme and outrageous" conduct. *Ugalde,* 990 F.2d at 243.

■ The conduct alleged by Hockaday is far less egregious than other actions found not to constitute intentional infliction of emotional distress as a matter of law in a number of situations. *See, e.g., Ramirez,* 970 F.2d at 1376–77; *Johnson,* 965 F.2d at 34; *Guthrie v. Tifco Indus.,* 941 F.2d 374, 379 (5th Cir. 1991), *cert. denied,* 503 U.S. 908, 112 S.Ct.

1267, 117 L.Ed.2d 495 (1992); *Clayton v. Nabisco Brands, Inc.,* 804 F.Supp. 882, 888 (S.D.Tex.1992); *Garcia v. Andrews,* 867 S.W.2d 409 (Tex.App.—Corpus Christi 1993, no writ); *Horton v. Montgomery Ward & Co.,* 827 S.W.2d 361, 369 (Tex.App.—San Antonio 1992, writ denied). Indeed, the Texas First Court of Appeals recently held that an employee's termination in violation of the Whistleblower Act did not, as a matter of law, constitute extreme and outrageous conduct. *Beiser v. Tomball Hosp. Auth.,* 902 S.W.2d 721, 725 (Tex.App.—Houston [1st Dist.] 1995, no writ). Here, the conduct of TDCJ, while perhaps unjust, was not so vile or reprehensible to be regarded as being beyond "all bounds of decency" or "utterly intolerable in a civilized community." *See MacArthur,* 45 F.3d at 898; *Clayton,* 804 F.Supp. at 888; *Wornick,* 856 S.W.2d at 734. In short, TDCJ's conduct was not "outrageous."

■ Moreover, Hockaday has not shown that any emotional distress she may have suffered was severe. A claim of intentional infliction of emotional distress requires that there be "sufficient proof of severe emotional distress, wholly apart from any outrageous conduct on the defendant's part." *Tidelands Auto. Club v. Walters,* 699 S.W.2d 939, 944 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.); *see also Badgett v. Northwestern Resources Co.,* 818 F.Supp. 998, 1003 (W.D.Tex.1993). The severity of distress is an element of the cause of action, not merely a matter of damages. *Benavides,* 848 S.W.2d at 195; *K.B. v. N.B.,* 811 S.W.2d 634, 640 (Tex.App.—San Antonio 1991, writ denied), *cert. denied,* 504 U.S. 918, 112 S.Ct. 1963, 118 L.Ed.2d 564 (1992).

■ "Emotional distress" means any highly unpleasant mental reaction such as extreme grief, shame, humiliation, embarrassment, anger, disappointment, worry, and nausea. *Behringer v. Behringer,* 884 S.W.2d 839, 844 (Tex.App.—Fort Worth 1994, writ denied); *see also Washington v. Knight,* 887 S.W.2d 211, 216 (Tex.App.—Texarkana 1994, writ denied); *Badgett,* 818 F.Supp. at 1003; *Tidelands Auto. Club,* 699 S.W.2d at 945. In order to recover damages, however, the

plaintiff must prove more than mere worry, anxiety, vexation, embarrassment, or anger. *Regan v. Lee*, 879 S.W.2d 133, 136 (Tex. App.—Houston [14th Dist.] 1994, no writ); *Haryanto v. Saeed*, 860 S.W.2d 913, 923 (Tex. App.—Houston [14th Dist] 1993, writ denied). "The law intervenes only where the distress is so severe that no reasonable person should be expected to endure it." *Behringer*, 884 S.W.2d at 844 (citing Restatement (Second) of Torts § 46, comment j).

 Here, Hockaday does not claim to have experienced any psychiatric problems, like those encountered by the plaintiff in *Johnson*, or even any headaches, such as those suffered by the plaintiff in *Clayton*, stemming from the defendant's actions. *See Johnson*, 965 F.2d at 33; *Clayton*, 804 F.Supp. at 885. She certainly does not claim to be suffering from anything approaching the possibly suicidal, reactive depression experienced by the plaintiff in *Wilson. See Wilson*, 939 F.2d at 1141; *see also Motsenbocker v. Potts*, 863 S.W.2d 126, 135 (Tex. App.—Dallas 1993, no writ); *American Medical Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 343 (Tex.App.—Houston [14th Dist.] 1991, no writ). Hockaday also has not alleged that she suffers from post-traumatic stress syndrome as diagnosed in *Haryanto. See Haryanto*, 860 S.W.2d at 922. Hence, Hockaday's claimed emotional distress cannot be said to be "so severe that no reasonable [person] could be expected to endure it." *K.B.*, 811 S.W.2d at 640; *Benavides*, 848 S.W.2d at 195.

Thus, Hockaday has failed to adduce specific facts sufficient to support two of the required elements of an intentional infliction of emotional distress claim under Texas law—extreme conduct and severe distress. Accordingly, summary judgment on this claim is proper.

III. *Conclusion*

Hockaday has failed to meet her summary judgment burden in connection with her claims against TDCJ. There exist no genuine issues of material fact under FED.R.CIV.P. 56(c), and TDCJ is entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

Accordingly, TDCJ's motion for summary judgment on Hockaday's claims of violation of the Whistleblower Act, civil rights violations, breach of contract, gross negligence, and intentional infliction of emotional distress is GRANTED.

IT IS SO ORDERED.