John G. DENTON and Paula J. Savage, Plaintiffs,

v.

James MORGAN, Commissioner, Juvenile Board of Comanche County, Texas; et al., Defendants.

No. 4:92–CV–164–Y.

United States District Court, N.D. Texas, Fort Worth Division.

Sept. 18, 1996.

Mark S. Partin, Advocacy, Inc., Austin, TX, for Plaintiffs.

John G. Denton, Hico, TX, pro se.

Paula J. Savage, Humble, TX, pro se.

1. The Court ruled during trial that the only defendants before the Court were the individual boards. No defendants were before the Court in their individual capacities.

2. Though the motion is entitled "Motion for Judgment Notwithstanding the Verdict," the more correct title for the motion under amended Rule 50(b) is "Renewed Motion for Judgment as a Matter of Law."

Randall Dixon Fife, Fanning Harper & Martinson, Dallas, TX, R.H. Wallace, Jr., Tracy Diane Rizos–Vaughan, Shannon Gracey Ratliff & Miller, Fort Worth, TX, George Stewart Whitehead, Attorney General of Texas, General Litigation Division, Austin, TX, for Defendant Morgan.

Paul K. Pearce, Jr., Matthews Carlton & Stein, Dallas, TX, Randall Dixon Fife, Fanning Harper & Martinson, Dallas, TX, Douglas Dickson Fletcher, Fletcher & Springer, Dallas, TX, for Remaining Defendants.

### ORDER GRANTING JUDGMENT AS A MATTER OF LAW IN PART, DENYING IN PART, AND ORDERING REMITTITUR

MEANS, District Judge.

Pending before the Court is Defendants' Second Motion for Judgment Notwithstanding the Verdict, filed on June 27, 1996. Having carefully considered the motion, Plaintiffs' response, the reply, and relevant case law, the Court will PARTIALLY GRANT the motion.

### I. BACKGROUND

Plaintiffs John Denton and Paula Savage received a favorable jury verdict on which judgment was entered on June 5, 1996. The judgment was later amended on June 17. Defendants Ernie Reinke, Commissioner, Juvenile Board of Bosque County, Texas; John Weaver, Commissioner, Juvenile Board of Comanche County, Texas; and Charles Garrett, Commissioner, Juvenile Board of Hamilton County, Texas; (collectively, "Defendants")[1], move the Court to set aside the jury verdict and render judgment as a matter of law in favor of Defendants.[2]

Plaintiff Denton brought a claim under the Texas Whistleblower Act and a First Amendment claim under 42 U.S.C. § 1983, the latter of which he was joined in by Savage.[3]

3. The Texas Whistleblower Act provision at issue here is found in former TEX.REV.CIV.STAT.ANN. art. 6252–16a, which was repealed in 1993 and codified at TEX. GOV'T CODE ANN § 554.002(a) (Vernon Supp.1996). The act was further amended in 1995.

Plaintiffs, both juvenile probation officers working in Comanche, Bosque, and Hamilton counties, alleged at trial that Defendants fired them in retaliation for writing a letter to the Texas Education Agency (the "TEA") complaining about the failure of the Clifton Independent School District ("Clifton") to provide educational services to one of Plaintiffs' clients, a juvenile denoted as "W.D.A." Plaintiffs thought that Clifton's lack of accommodation for W.D.A. was an illegal omission, and thus they reported it to the TEA, the agency they believed to have authority over the school district.

According to Plaintiffs' testimony, Defendants were so embarrassed and angered by the letter that they eventually fired the two officers. Testimony at trial showed that Defendants did indeed possess the sole power to fire Plaintiffs. The jury agreed with Plaintiffs that their terminations were in retaliation for reporting an illegality and for speaking out on a matter of public concern; and it awarded Plaintiffs damages for lost past income, future income, and pensions. Defendants move the Court to set aside the jury verdict and judgment on the ground that Plaintiffs failed, as a matter of law, to prove necessary elements of their causes of action.

## II. ANALYSIS

### A. Texas Whistleblower Act Claim

Defendants argue that Denton cannot maintain an action under the Texas Whistleblower Act because Denton did not report a violation which his employer, the defendant boards, committed. The Court agrees with Defendants because it became clear at trial that Clifton, and not Defendants, committed the alleged illegality which Plaintiffs reported to the TEA. The Court will therefore set aside the verdict and judgment as to the whistleblower claim on this ground alone, not reaching the other bases Defendants posit for overturning the verdict.

At the time of Denton's termination, the Whistleblower Act provided that:

A state agency or local governmental body may not suspend or terminate the employment of, or otherwise discriminate against, a public employee who reports a violation of law to an appropriate law enforcement authority if the employee report is made in good faith.

Tex.Civ.Stat.Ann. art. 6252–16a § 2 (Vernon Supp.1992). While the express wording of the provision does not state that the violator must be the whistleblower's employer or a fellow employee, no court has ever interpreted it otherwise.

In *Davis v. Ector County,* 40 F.3d 777, 786 (5th Cir.1994), the Fifth Circuit indicated that there are at least two requirements to make out a whistleblower claim: 1) an employer violation, and 2) a violation concerning issues in the workplace. Davis was a district attorney's office employee who wrote a letter to the county commissioner's court concerning a cover-up by the sheriff's office of his wife's sexual harassment claim against that office. The district attorney's office fired Davis after learning of the letter. *Id.* at 780.

The defendants argued that Davis's report detailed an illegal act committed by a non-employer agency (the sheriff's office) and, thus, did not fall within the meaning of the "in the workplace" requirement of the whistleblower provision or concern his "employer." *Id.* at 785–786. The Fifth Circuit rejected this argument and held that both the workplace and the employer in this case was Ector County itself, not merely the district attorney's office in which the plaintiff worked. *Id.* at 786. The court stated: "We conclude that Davis reported violations concerning his employer [Ector County] and addressed issues concerning his workplace [also Ector County]." *Id.* Thus, it appears that both requisites are necessary to the success of a whistleblower cause of action.

Denton, a juvenile probation officer, has proven that Clifton I.S.D. was one of his many "workplaces" and that the education of a juvenile concerned an issue of his workplace, but he has not shown that the alleged illegality—the clandestine report of which in part caused his termination—was committed by his employer, the three defendant juvenile boards. There is no dispute that the Clifton I.S.D., a governmental entity legally and conceptually distinct from the county boards, committed the omission of which Denton complains. Accordingly, Denton has failed

under *Davis* to prove the crux of a whistle-blower cause of action: an employer violation.

Other courts have also implicitly required the employer (or a fellow employee) to have committed the allegedly illegal act. In *Castaneda v. Texas Dep't of Agric.*, 831 S.W.2d 501, 503–504 (Tex.App.—Corpus Christi 1992, writ denied), the court interpreted the phrase "reports a violation of the law" to include "any disclosure of information regarding a public servant's *employer* tending to directly or circumstantially prove the substance of a violation of . . . law." (Emphasis added.) This exact language is quoted by the court in *Texas Dep't of Human Serv. v. Hinds*, 860 S.W.2d 893, 897 (Tex.App.—El Paso 1993), *rev'd on other grounds*, 904 S.W.2d 629 (Tex.1995). Furthermore, the court in *Stinnett v. Williamson County Sheriff's Dep't*, 858 S.W.2d 573, 575 (Tex.App.—Austin 1993, writ denied) stated that, "[t]raditionally, the Whistleblower Act has been applied to public employees who are fired in retaliation for reporting *their employer's violations* of law that are detrimental to the public good or society in general." (Emphasis added; citations omitted.) *See also Hockaday v. TDCJ*, 914 F.Supp. 1439, 1443 (S.D.Tex.1996) (quoting *Stinnett* ).

■ While no case specifically holds that a plaintiff must have alleged a violation of the law by his employer in order to maintain a whistleblower claim, the case law strongly so implies, and Denton has cited no case to the contrary. Common sense impels toward this conclusion as well. While there is a compelling rationale for protecting whistleblowing employees from retaliation by their misbehaving bosses, the rationale is not so compelling as to employees who complain about

illegalities committed by persons working in or for another governmental entity. In the latter situation, the employer has a legitimate interest in disciplining employees who allege violations of the law by those with whom the employer cooperates, does business, or has an important relationship. This interest is even greater where, as here, the employee's complaint, however much in good faith, is made behind the employer's back and is erroneous.[4] This Court does not believe that public officials, like the defendant judges in this case, should be powerless against employees who make bogus (though arguably good-faith) allegations against persons with whom maintaining a good working relationship is essential to the successful performance of the officials' public duties.[5] Because plaintiff Denton has failed to prove that his allegation concerned a violation of the law by his employer, his whistleblower cause of action must fail. The judgment entered for Denton on the jury verdict under the Texas Whistleblower Act is therefore set aside, and Denton will take nothing on the claim.

**B. First Amendment Claim**

Defendants move for judgment notwithstanding the verdict on Plaintiffs' First Amendment claim brought under 42 U.S.C. § 1983. In their motion, Defendants do not challenge the jury's verdict *per se* with respect to the First Amendment claim. Rather, Defendants argue that it was error for the Court to even submit that claim to the jury in the first place. Defendants reason that, because Plaintiffs failed to adduce any evidence at trial that the three juvenile probation boards' allegedly unconstitutional act in terminating them was pursuant to any

---

4. TEA's written response to Plaintiffs' letter alleging that Clifton I.S.D. failed—in violation of federal law—to provide educational services to W.D.A. states:

> Documentation indicated that [Clifton] conducted an [admission, review, and dismissal (ARD)] meeting within a short time after enrollment. . . . While *it is expected that special* education services . . . will begin immediately . . . short delays are allowed by the federal regulations. Your allegation cannot be sustained.

(Defs.' Ex. 19.)

5. The 1995 amendments to the Texas Whistleblower Act, though not applicable to this case, may show that the Texas legislature sees this issue differently. The legislature amended the act to provide that a state or local governmental entity may not take adverse action against a public employee who reports "a violation of law by the employing governmental entity *or another public employee*." TEX. GOV'T CODE ANN. § 554.002 (Vernon Supp.1996). (Emphasis added.)

custom, policy, or practice, there can be no liability under § 1983.[6]

■ Under present § 1983 law, liability may be imposed upon governmental units for depriving individuals of constitutional rights in two ways. First, liability can be imposed upon a governmental unit for its employee's intentional acts that deprive someone of his constitutional rights so long as the act was done in accordance with that unit's policies, practices, or customs. *See Monell v. Dep't of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978); and *see also Hart v. Walker,* 720 F.2d 1443, 1445 (5th Cir.1983). Second, a governmental unit can be held liable if one of its policy-making bodies or officials—those whose edicts or acts can fairly be said to represent official policy, or those who rank as the ultimate repository of power on the particular matter at issue—makes even a single decision that violates a person's constitutional rights. *See Jett v. Dallas Indep. School Dist.,* 491 U.S. 701, 736–737, 109 S.Ct. 2702, 2723–2724, 105 L.Ed.2d 598 (1989); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986); *Brown v. Bryan County,* 67 F.3d 1174, 1183 (5th Cir. 1995); *Hart,* 720 F.2d at 1445.

Defendants argue as if a subordinate employee fired Plaintiffs and that Plaintiffs therefore had to prove that the terminations were carried out pursuant to the boards' custom, practice, or policy. Plaintiffs respond that, because no subordinate ordered the firings, there was no need for them to offer evidence at trial that the terminations were carried out pursuant to the boards' customs, policies, or practices. Rather, Plaintiffs argue that the boards themselves were the final policy-makers for purposes of terminating the probation officers, and therefore evidence of their decisions to terminate Plaintiffs was enough, by itself, to impose liability on the boards.

■ Whether the boards had final policy-making authority so that, as Plaintiffs urge, they may be held liable for these constitutional violations is a question of law to be resolved by the Court. *Jett,* 491 U.S. at 737, 109 S.Ct. at 2723; *Flores v. Cameron County,* 92 F.3d 258 (5th Cir.1996) (to be reported at 92 F.3d 258). From the record developed prior to trial, including the statutory authority creating and otherwise concerning the individual boards,[7] it appears to the Court that the boards did have ultimate authority to terminate Plaintiffs, and thus, their official acts of firing Plaintiffs were, as a matter of law, sufficient to impose liability upon the county juvenile boards.

■ Confirmation came at trial, where there was undisputed evidence that the boards were vested with the power to terminate the juvenile probation officers and that they voted unanimously to do so. No other governmental body had such authority. Thus, this Court holds that, as a matter of law, the boards were the ultimate repository of the power to terminate Plaintiffs and, in exercising that power, they assumed liability for any attendant violation of Denton's and Savage's constitutional rights.

Defendants' objection to the Court's submission of the First Amendment claim to the jury for lack of any evidence of a policy or custom must fail. The Court DENIES Defendants' motion for judgment notwithstanding the verdict on the First Amendment

---

6. Defendants also assert that the only defendants identified as responsible parties, the individual juvenile probation boards, did not have the legal authority to hire or terminate the probation officers and therefore could not be held individually liable for Plaintiffs' terminations. Rather, they argue that the boards could only operate together as one board, the 220th Judicial District Board, which they claim is a state entity.

At trial, however, the Court ruled that the 220th Judicial District Board was not a legal entity for purposes of this litigation and that the boards individually would be submitted to the jury as defendants. The Court also held that the

boards were creatures of county government rather than arms of the state, a ruling which finds support in the recent Fifth Circuit case of *Flores v. Cameron County, Texas,* 92 F.3d 258 (5th Cir.1996) (to be reported at 92 F.3d 258), and thus, sovereign immunity was not implicated.

7. TEX.HUM.RES. CODE ANN. §§ 152.0241 (Bosque County), 152.0531 (Comanche County), 152.1031 (Hamilton County) (Vernon 1990 & Supp.1996). The Court also relied upon related provisions in chapters 142 and 152 of the Texas Human Resources Code.

claim, and the jury's verdict as to liability on that claim and the Court's judgment thereon will stand undisturbed.

### C. Remittitur

■ Defendants move this Court to remit portions of the jury's damage awards to Savage and Denton. The Court finds that, in law, three awards are insufficiently supported by the evidence. The first is the past-lost-wages amount awarded to Denton. Plaintiffs' expert economist testified that Denton's past lost wages totaled $24,376, but the jury awarded $117,876. There was no testimony which could support such a large award. Accordingly, the Court remits the jury's award of past lost wages to Denton by $93,500.

The second award is to Denton for a lost pension. Denton's expert testified that Denton's loss was $82,620, but the jury awarded him $110,000. No evidence is in the record to support damages above the figure established by the expert witness. Accordingly, the Court will remit the lost pension award to Denton by $27,380.

Finally, there is no factually sufficient evidence for the amount of past lost wages awarded to Savage. Plaintiffs' expert testified that she lost $8,640 in past wages, but the jury gave her $19,600. Since Savage presented no evidence which could reasonably support the jury award, the Court remits the jury's award to Savage for past lost wages by $10,960.

### III. ORDER AS TO RELIEF

IT IS THEREFORE ORDERED that, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Defendants' Motion for Judgment Notwithstanding the Verdict is PARTIALLY GRANTED and that the verdict and judgment be set aside as to plaintiff John Denton's cause of action under the Texas Whistleblower Act. Plaintiff Denton shall take nothing against any defendant by way of his whistleblower claim.

IT IS FURTHER ORDERED that plaintiff Denton's judgment award against the defendant Juvenile Boards of Comanche, Hamilton, and Bosque counties for past lost wages shall be remitted by $93,500, reducing his total award for past lost wages to $24,376.

IT IS ALSO ORDERED that plaintiff Denton's judgment award against the defendant Juvenile Boards of Comanche, Hamilton, and Bosque counties for lost pension shall be remitted by $27,380, reducing his total award for lost pension to $82,620.

IT IS ALSO ORDERED that plaintiff Savage's judgment award against the defendant Juvenile Boards of Comanche, Hamilton, and Bosque counties for past lost wages shall be remitted by $10,960, reducing her total award for past lost wages to $8,640.

THUS, IT IS ORDERED that plaintiff Denton shall have and recover from the defendant Juvenile Boards of Comanche, Hamilton, and Bosque counties a total judgment of $216,996 for past lost wages, future lost wages, and lost pension; and plaintiff Savage shall have and recover from the defendant Juvenile Boards of Comanche, Hamilton, and Bosque counties a total judgment of $11,510 for past lost wages and lost pension.

All other relief that Defendants requested in their motion which is not granted herein is DENIED.

SO ORDERED.