IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-60812
Summary Calendar
_____


TENA MATTHEWS,

                                              Plaintiff-Appellant,

versus

METHODIST HEALTHCARE, D/B/A CONSOLIDATED RECOVERY SYSTEMS,

                                              Defendant-Appellee.


--------------------
Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:00-CV-638BN
--------------------
July, 12, 2002

Before DeMOSS, PARKER, and DENNIS, Circuit Judges.

PER CURIAM:[*]

    Plaintiff-Appellant, Tena Matthews ("Matthews"), appeals from

the district court's grant of summary judgment in favor of

defendant-appellee, Methodist HealthCare d/b/a Consolidated

Recovery Systems ("Methodist"), concerning Matthews' claims for

breach of contract, tortious interference with contract,

_____

    [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

intentional infliction of emotional distress, and wrongful discharge under Title VII. For the following reasons, we AFFIRM.

## I. BACKGROUND

In March 1996, Consolidated Recovery System ("CRS"), a subsidiary of Methodist, hired Matthews, a white female, as a debt collector. Matthews' job involved manually calling debtors of Methodist to make payment arrangements, or answer calls placed by a computer-operated automatic dialer. By all accounts, Matthews was one of the top collectors during her tenure at CRS. However, in July 1999, Matthews began reporting to a new supervisor, Lance Hafler. From that point forward, she began to experience work-related problems.

Hafler was a stickler who strictly enforced the collection and payment guidelines (the "Guidelines") used by the collectors on a daily basis. Apparently, Hafler's practice departed from the methods of previous supervisors. Matthews did not like Hafler's management style and claims that Hafler treated her in an "ugly" fashion. She also contends that she complained to her supervisors, Hafler included, that some of the practices required by Methodist violated the Federal Debt Collection Practices Act ("FDCPA").

On September 9, 1999, Hafler issued a corrective action against Matthews for insubordination. After Matthews complained to Hafler's immediate supervisor, Wayne Jackson, the insubordination action was reduced to a verbal warning. On February 4, 2000,

2

Hafler issued another correction action against Matthews for inappropriate customer service that had a negative effect on the department. In other words, Matthews had bad-mouthed the company, Hafler, and Night Supervisor Richard Beasley to other collectors. Those collectors had then complained to Hafler.

On February 11, 2000, CRS suspended Matthews without pay for allegedly falsifying payroll records on the "Vowell" account. CRS claims that Matthews made an improper notation on the "Vowell" account. Hafler conducted a further review of Matthews' work and claims to have found at least nine instances in which Matthews made inappropriate notations in the computer system in violation of the Guidelines during the time period from January 4, 2000 until February 10, 2000. Subsequently, Matthews was terminated.[1]

In August 2000, Matthews filed suit in federal district court. After discovery closed, Methodist filed a motion for summary judgment as to all Matthews' claims. The district court granted summary judgment to Methodist on all of Matthews' claims except her state law *McArn* claim.[2] The district court declined to exercise

---

[1] Methodist contended Matthews was terminated for falsification of payroll documents. Matthews contended she was actually terminated for opposing the collection practices made illegal by the FDCPA and/or for discriminatory reasons in violation of Title VII.

[2] In *McArn v. Allied Bruce-Terminix Co., Inc.*, 626 So.2d 603, 607 (Miss. 1993), the Mississippi Supreme Court created a narrow public policy exception to the at-will employment doctrine in two circumstances. Under *McArn*, it is unlawful for an employer to terminate an employee either (1) because the employee refused to

supplemental jurisdiction over the remaining *McArn* claim pursuant to 42 U.S.C. § 1367(c)(3) and entered final judgment dismissing all of Matthews' claims with prejudice except the *McArn* claim which was dismissed without prejudice.  Matthews timely appeals the summary judgment ruling.

## II.   STANDARD OF REVIEW

We review *de novo* the district court's grant of summary judgment.  *Walton v. Bisco Industries, Inc.*, 119 F.3d 369, 370 (5th Cir. 1997).

## III. DISCUSSION

Matthews contends that genuine issues of material fact exist which preclude the grant of summary judgment on her claims for breach of contract, tortious interference with contract, intentional infliction of emotional distress, and wrongful discharge under Title VII.  We address each argument in turn.

## A.    Breach of Contract and Tortious Interference with Contract

Matthews argues that Methodist issued her a policies and procedure manual (i.e., employee handbook) which created an implied contract of employment.  She contends that this manual set forth

---

participate in an illegal act, or (2) because the employee reported illegal acts of his employer to his employer.  After considering all the summary judgment evidence, the district court determined that Matthews produced sufficient evidence to show that genuine issues of material fact existed concerning whether she was terminated for refusing to participate in acts made illegal under the FDCPA, or for reporting to CRS that some of the company's collection methods violated the FDCPA.  Neither party appeals this ruling.

4

procedures regarding progressive discipline which Methodist was contractually obligated to follow, but that Methodist did not follow these procedures in making the decision to terminate her.

In *Bobbitt v. The Orchard, Ltd.*, 603 So.2d 356, 361 (Miss. 1992), the Mississippi Supreme Court held that when an employer furnishes it employees with a detailed manual stating its rules of employment, and setting forth procedures that will be followed in event of infraction of its rules of employment, the employer is obligated to follow its provisions in reprimanding, suspending or disciplining an employee for infractions specifically covered by the manual. However, both the Fifth Circuit and the Mississippi Supreme Court have also ruled that an employment manual will not modify at-will employment status when the employee signs an employment application which contains an express employment at-will disclaimer. *Solomon v. Walgreen Co.*, 975 F.2d 1086 (5th Cir. 1992); *Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086, 1088-89 (Miss. 1987).

Here, Matthews signed an employment application which specifically stated that Methodist had the option to terminate her employment "with or without cause and with or without notice, at any time." Moreover, the employee handbook at issue specifically states that (1) the handbook is not intended to constitute a legal contract with any employee and (2) the handbook provisions regarding discipline and discharge "do not waive or affect MHS'

5

rights as an employer to terminate employment for any reason or no reason without notice." Thus, the legal precedent in Mississippi and this Circuit establish that the employee manual did not modify Matthews' status as an at-will employee. Matthews' breach of contract argument therefore fails.[3]

**B.    Intentional Infliction of Emotional Distress**

Matthews contends that the district court erred in granting summary judgment to Methodist on the intentional infliction of emotional distress ("IIED") claim. To prevail on an IIED claim under Mississippi law, a plaintiff must prove that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Brown v. Inter City Federal Bank for Savings*, 738 So.2d 262, 264 (Miss. 1999).

In this Circuit, we have often stated that plaintiffs face a heavy burden when trying to show that a defendant's conduct falls into this category, especially when the IIED allegation arises in the context of an employment dispute. Conduct of an employer that is illegal does not necessarily qualify as "outrageous." *See Ugalde v. W.A. McKenzie Ashphalt Co.*, 990 F.2d 239, 243 (5th Cir. 1993)("[e]ven conduct which may be illegal in an employment context

---

[3] Because no employment contract existed between Matthews and Methodist, it is axiomatic that Matthews cannot recover on any claim for tortious interference with contract.

6

may not be the sort of conduct constituting extreme and outrageous conduct."); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir. 1991)("although [the employer's] conduct often rises to the level of illegality, except in the most unusual cases it is not the sort of conduct, as deplorable as it may sometimes be, that constitutes 'extreme and outrageous' conduct"). Proving the point, we recently concluded that even where sufficient evidence existed from which a reasonable juror could conclude that an employer racially harassed its employee in violation of Title VII the alleged harassment could not rise to the level of extreme and outrageous conduct as a matter of law. *Walker v. Thompson*, 214 F.3d 615, 628 (5th Cir. 2000).

In the case *sub judice*, the district court determined that Matthews' claims that she was once "hollered" at by Manager Wayne Jackson during a meeting between the two of them and that Assistant Manager Hafler intimidated her did not rise to the level of extreme and outrageous conduct. We agree. Although Matthews may have been "hollered" at, there is no evidence to suggest that either Jackson or Hafler called Matthews names or used obscene language in her presence. Moreover, Matthews' allegation that she was "intimidated" only reflected her perception that Hafler was a very controlling manager. In short, the behavior alleged to have been engaged in by the supervisors does not rise to the level of "outrageous conduct" necessary to support an intentional infliction

7

of emotional distress claim. *See Walker*, 214 F.3d at 628 (citing RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)) ("Insults, indignities, threats, annoyances, or petty oppressions, without more, do not rise to the level of intentional infliction of emotional distress").[4]

## C. Wrongful Discharge Under Title VII

Matthews had the initial burden of establishing a prima facie case of discrimination in violation of Title VII. To establish her prima facie case, she must show that: (1) she is a member of a protected class: (2) she was qualified for her position as collector; (3) she was discharged from employment; and (4) Methodist sought to replace her with a similarly qualified male or African-American. *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir. 1997).

---

[4] Although Matthews has not specifically raised the issue, we also reject the notion that Methodist's alleged violation of *McArn* could in and of itself rise to the level of extreme and outrageous conduct. *See Rescar, Inc. v. Ward*, 60 S.W.3d 169, 179 (Tex. App. - Houston [1st Dist.] 2001, pet. filed)(terminating employee for failing to perform illegal acts does not constitute extreme and outrageous conduct as a matter of law); *Beiser v. Tomball Hosp. Auth.*, 902 S.W.2d 721, 725 (Tex. App. - Houston [1st Dist.] 1995, no writ) (employer hospital who allegedly fired employee lab technician for notifying the FDA that the hospital was storing patient blood samples and donor blood units in violation of FDA regulations did not engage in conduct which constituted extreme and outrageous conduct as a matter of law); *Hockaday v. Texas Dept. of Criminal Justice*, 914 F. Supp. 1439, 1448 (S.D. Tex. 1996) (allegation that TDCJ employee was fired by TDCJ in violation of the Texas Whistleblower Act for voicing concerns over TDCJ's method of alleviating crowded jail cells was not "outrageous").

The district court found that Matthews had not presented any evidence to show that the position from which she was terminated was filled by a black or male collector. Accordingly, the district court ruled that Matthews had not satisfied her prima facie case and granted summary judgment to Methodist on the Title VII discrimination claim. We agree with the district court's decision. On appeal, Matthews has not presented any evidence to show that she was replaced by a person outside of her protected class. Therefore, her Title VII claim also fails.

## IV. CONCLUSION

For the reasons stated above, we AFFIRM the district court's summary judgment ruling.

9