Natalia FLORES, Plaintiff–Appellee
Cross–Appellant,

v.

CAMERON COUNTY, TEXAS,
et al., Defendants,

Cameron County, Texas, Defendant–
Appellant Cross–Appellee.

No. 94–60262.

United States Court of Appeals,
Fifth Circuit.

Aug. 6, 1996.

Rehearing Denied Sept. 11, 1996.

Charles Willette, Jr., Mark Sossi, Willette & Trevino, Brownsville, TX, for Appellant.

Lawrence A. Walsh, Brownsville, TX, J. Patrick Wiseman, Wiseman, Durst & Tuddenham, Austin, TX, for Flores.

Lisa Powell, Atlas & Hall, McAllen, TX, for Garza, Hester, et al.

Before KING, DeMOSS and STEWART, Circuit Judges.

KING, Circuit Judge:

Natalia Flores, individually and as the administratrix of the estate of Juan Manuel Castillo–Flores, sued Cameron County and other defendants under 42 U.S.C. § 1983, seeking damages for the alleged violation of Juan Manuel Castillo–Flores's constitutional rights resulting in his death while he was detained in the Cameron County Juvenile Detention Center. After a jury trial, the district court entered judgment for Natalia Flores based on the verdict. Cameron County appeals the district court's judgment and Natalia Flores cross-appeals. We vacate the judgment against Cameron County and remand for a new trial.

## I. BACKGROUND

### A. FACTS

On June 2, 1988, fourteen-year-old Juan Manuel Castillo–Flores ("Juan") was detained at the Cameron County Juvenile Detention Center (the "detention center"), having been arrested for the burglary of a building. The detention center routinely had two detention center guards on duty to supervise up to twenty-one juveniles during the day, and only one guard during the night shift. Although the maximum capacity of the detention center was twenty-one juveniles, on some occasions, including the day of Juan's death, the detention center housed more than twenty-one juveniles.[1] The male portion of the detention center consisted of a central recreation room, adjacent to which individual rooms were located.

Early in the day while confined to his cell, Juan began banging his head against the door, apparently to attract the guards' attention. The guards on duty, Porfirio Ramirez ("Ramirez") and Servando Betancourt ("Betancourt"), attempted to dissuade Juan from banging on the door. When they were unsuccessful, they obtained permission from the detention center superintendent, Thelma Sullivan, to shackle him to his bed with foot cuffs. The first shackling was uneventful, and eventually the foot cuffs were removed. That evening, Juan began banging his head against the door again, and Ramirez and Betancourt decided to restrain him again.

Ramirez knelt at the foot of Juan's bed with the foot cuffs, his back to Juan, intending to secure his feet to the bedpost. Betancourt stood in the doorway to Juan's room. Betancourt was responsible for controlling Juan while Ramirez applied the foot cuffs. Betancourt had to remain in the doorway, however, because otherwise the cell door would automatically close and lock. As Betancourt and Ramirez were the only guards at the detention center, if the cell door locked them inside Juan's cell, the other juveniles could escape from the detention center because there would be no one to enter the control room and reopen the cell door.[2] Additionally, Betancourt was responsible for observing and controlling the juveniles in the main recreation room. Therefore, he continually had to look back and forth between the recreation room and Juan's room.

While standing in the doorway, Betancourt saw Juan suddenly move forward. Fearing that Juan was reaching to strike Ramirez,

---

1. On June 2, 1988, the detention center housed 22 male juveniles.

2. Experience demonstrated this necessity. On more than one occasion, juveniles had escaped while the detention center guards were locked in a cell with an automatically locking door.

Betancourt lunged forward to grab Juan. In doing so, Betancourt applied his entire weight onto Juan's back, pushing his head forward and breaking his neck. The guards testified that they did not realize at the time that Juan had been injured. Ramirez then applied the foot cuffs, and the guards stood to leave. Ramirez testified that as they left Juan uttered an obscenity. Juan was found dead in his cell the next morning. Medical testimony indicated that Juan could have remained conscious for fifteen minutes to two hours before he died.

## B. PROCEDURE

On October 21, 1988, Natalia Flores ("Flores"), Juan's mother, filed suit against the following defendants: (1) Betancourt, (2) Ramirez, (3) Amador Rodriguez, Jr. ("Rodriguez"), the Chief Juvenile Probation Officer, (4) Cameron County, (5) the County Judge and Commissioners of Cameron County, (6) the Cameron County Juvenile Probation Board (the "Juvenile Board") and (7) the individual members of the Juvenile Board. All individual defendants were sued in both their individual and their official capacities. Flores's original complaint alleged that Juan's death was caused by the defendants' use of excessive force, deliberately indifferent failure to supervise and train the detention center guards, and deliberately indifferent failure to provide medical care in violation of 42 U.S.C. § 1983. The complaint also alleged related pendent state law claims. To remedy the violations of § 1983, the complaint sought damages for Juan's pain and suffering, analogous to Texas law survival damages, as well as for Flores's own pain and suffering and loss of support and services, analogous to Texas law wrongful death damages.

On January 23, 1989, the district court dismissed Flores's claims against the following defendants: (1) the Juvenile Board on the basis of Eleventh Amendment immunity; (2) the members of the Juvenile Board in their official capacity because of the dismissal of the Juvenile Board and in their individual capacity on the basis of legislative immunity; (3) Rodriguez because Flores's complaint did

not meet the heightened pleading required in cases against individuals protected by qualified immunity; and (4) the County Judge and Commissioners of Cameron County in their official capacities because those claims were duplicative of the claims against the County and in their individual capacities based on legislative immunity. Although the court granted Flores's motion to reconsider the dismissal of the Juvenile Board, it again dismissed the Juvenile Board on Eleventh Amendment immunity grounds in an order dated May 1, 1989.

Flores filed an amended complaint on October 29, 1989, raising the same claims as the original complaint against Cameron County, Rodriguez, Thelma Gonzalez Sullivan ("Sullivan"), the superintendent of the detention center, Betancourt, and Ramirez. On August 25, 1992, the district court granted summary judgment to Rodriguez and Sullivan in their individual capacities on qualified immunity grounds, and dismissed the claims against them in their official capacities as redundant with the claims against Cameron County.

Thus, by the time of trial, the district court had dismissed all defendants except for Betancourt, Ramirez, and Cameron County.[3] After a seven-day trial, the jury returned its verdict on February 23, 1994. The jury found that (1) Betancourt's use of excessive force proximately caused Juan's death, and (2) Cameron County's policy of failing to adequately train its juvenile detention officers proximately caused Juan's death. The jury found no liability for Ramirez. The jury awarded damages of $250,000 for Juan's pain and suffering, $50,000 for lost support and services, and $350,000 for Flores's mental pain and suffering. On April 5, 1994, the district court ordered the payment of attorneys' fees to Flores's counsel and entered final judgment on the jury's verdict. Both Cameron County and Flores filed notices of appeal.

## II. DISCUSSION

On appeal, Cameron County raises the following ten points of error: (1) the district

**3.** The district court also dismissed all of Flores's pendent state law claims prior to trial.

court erred in instructing the jury that Rodriguez and the Juvenile Board are the policymakers for Cameron County; (2) the district court erred in instructing the jury on the standard for use of excessive force on a pretrial detainee; (3) the district court erred in refusing to submit Cameron County's proposed interrogatory concerning county liability; (4) the district court erred in submitting an interrogatory to the jury requesting damages for Flores's personal injuries; (5) the Texas statute of limitations bars Flores's claims on behalf of Juan's estate; (6) the district court erred by testifying from the bench and making prejudicial remarks to the jury; (7) the district court erred in admitting evidence of a prior sexual assault on Juan; (8) insufficient evidence exists to show that Cameron County acted with deliberate indifference; (9) insufficient evidence exists to show that any failure to train by Cameron County caused Juan's death; and (10) the district court erred in denying the County's motion for remittitur because the jury verdict was excessive.

Flores raises two points of error on cross-appeal [4]: (1) the district court erred in calculating the award of attorneys' fees at the rate of $125 per hour; and (2) if we conclude that the district court erred in instructing the jury that the Juvenile Board was the policymaker for the County, then it also erred in dismissing the Juvenile Board on the grounds of Eleventh Amendment immunity.

We begin by addressing Cameron County's argument that the district court erred in instructing the jury that the Juvenile Board and Rodriguez are policymakers for Cameron County. Because we conclude that the policymaker instruction is reversible error, we will only address further the issues which are likely to come up again upon retrial.[5]

## A. JURY INSTRUCTIONS

Cameron County raises four challenges to the district court's jury instructions. Specifically, the County contends that the district court erred by: (1) instructing the jury that Rodriguez and the Juvenile Board are the policymakers for Cameron County; (2) instructing the jury on an incorrect standard for the excessive force claim; (3) refusing to submit to the jury the County's proposed interrogatory Number 4; and (4) submitting an interrogatory concerning damages for Flores's pain and suffering and lost support and services.

In *F.D.I.C. v. Mijalis,* 15 F.3d 1314, 1318 (5th Cir.1994), we set forth the standard of review for challenges to the district court's jury instructions:

> First, the challenges must demonstrate that the charge as a whole creates "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." Second, even if the jury instructions were erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case. If a party wishes to complain on appeal of the district court's refusal to give a proffered instruction, that party must show as a threshold matter that the proposed instruction correctly stated the law.

*Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1216 (5th Cir.1995) (quoting *Mijalis,* 15 F.3d at 1318).

### 1. The Policymaker Instruction

Cameron County argues that the district court erred in instructing the jury that the Cameron County Juvenile Probation Board "and/or" Amador Rodriguez were policymakers for whose policies the County could be

---

**4.** Flores also noticed a cross-appeal against the following individual defendants: the Estate of the Honorable Jack Goolsby; D.J. Lerma; Mike P. Cortinas, Jr.; Adolph Phomae, Jr.; Natividad Valencia; Judge Robert Garza; Judge Gilberto Hinojosa; Judge Darrell B. Hester; Judge Jane Akin Brasch; Judge Rogelio Valdez; Armando Rodriguez; and Thelma Gonzalez Sullivan. However, Flores did not pursue her cross-appeal against these individuals in her appellate brief or at oral argument. Accordingly, the cross-appeal against these individual defendants is dismissed.

**5.** Specifically, we do not reach Cameron County's arguments concerning the district court's comments from the bench, the sufficiency of the evidence, or the excessiveness of damages. We also do not address Flores's argument on cross-appeal challenging the attorney's fee award.

held liable. The district court instructed the jury as follows:

> Amador Rodriguez, the Executive Director of the Cameron County Juvenile Probation and/or the Cameron County Juvenile Probation Board is the official whose acts constitute final official policy of Cameron County for the actions in question here. Therefore, if you find that the acts of Amador Rodriguez and/or the Cameron County Juvenile Probation Board deprived the plaintiff of constitutional rights, Cameron County is liable for such deprivations.

Cameron County argues that this instruction was erroneous because neither the Juvenile Board nor Rodriguez are policymakers for Cameron County. Because the district court instructed the jury that the Juvenile Board and/or Rodriguez are policymakers, this instruction is only correct if both the Juvenile Board and Rodriguez are policymakers, because we cannot know on which policymakers' acts the jury based its finding of County liability.

The County challenges this instruction on two grounds. First, the County contends that the Juvenile Board, which the County concedes sets official policy for the detention center, does so on behalf of the State of Texas, rather than Cameron County, because the Juvenile Board is an agency of the State. Second, the County argues that, even if the Juvenile Board establishes detention center policy on behalf of the County, Rodriguez cannot be considered a county policymaker because the Juvenile Board did not delegate policymaking authority to him. Flores counters that the Juvenile Board is an agency of Cameron County rather than a state entity, and that the Juvenile Board delegated policymaking authority with respect to training of detention center personnel to Rodriguez. In addressing the County's arguments, we shall first review the law governing municipal liability for constitutional violations under § 1983. Then we shall determine whether the Juvenile Board and Rodriguez were policymakers for Cameron County.

### a. Municipal Liability under § 1983

■ It is well settled that a local governmental body such as Cameron County is liable for damages under § 1983 for constitutional violations resulting from official county policy or custom. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). A local government is responsible under § 1983 "when execution of [the] government's policy or custom, whether made by its lawmakers or by *those whose edicts or acts may fairly be said to represent official policy,* inflicts the injury. . . ." *Id.* at 694, 98 S.Ct. at 2037 (emphasis added). However, a local government may not be held liable under § 1983 for the unconstitutional acts of its non-policymaking employees—i.e., county liability may not rest on a theory of respondeat superior. *Id.* at 691, 98 S.Ct. at 2036.

■ Our task here is to determine which persons' edicts or acts represent the official policy of Cameron County with respect to the training of employees at the Cameron County Juvenile Detention Center. The Supreme Court has provided some guidance in determining "where policymaking authority lies for purposes of § 1983." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989); *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). First, "whether a particular official has 'final policymaking authority' is a question of state law." *Jett*, 491 U.S. at 737, 109 S.Ct. at 2723; *Praprotnik*, 485 U.S. at 123, 108 S.Ct. at 924; *Pembaur*, 475 U.S. at 483, 106 S.Ct. at 1299. "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority." *Pembaur*, 475 U.S. at 483, 106 S.Ct. at 1299. "[S]tate law (which may include valid local ordinances and regulations) will always direct a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *Praprotnik*, 485 U.S. at 125, 108 S.Ct. at 925.

■ Second, "the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial

**264**

judge *before* the case is submitted to the jury." *Jett,* 491 U.S. at 737, 109 S.Ct. at 2724.

> Reviewing the relevant legal materials, including state and local positive law, as well as custom or usage having the force of law, the trial judge must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.

*Id.* (internal quotations and citations omitted).

■ Cameron County contends that only policies established by the Cameron County Commissioners' Court, the governing body of Cameron County, are official county policies for which the County may be held liable under § 1983. However, "the power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level. *Monell*'s language makes clear that it expressly envisioned other officials 'whose acts or edicts may fairly be said to represent official policy,' and whose decisions therefore may give rise to municipal liability under § 1983." *Pembaur,* 475 U.S. at 480, 106 S.Ct. at 1298 (citations omitted). "[M]unicipalities often spread policymaking authority among various officers and official bodies. As a result, particular officers may have authority to establish binding county policy respecting particular matters and to adjust that policy for the county in changing circumstances." *Id.* at 483, 106 S.Ct. at 1300.

The district court concluded that the Cameron County Juvenile Probation Board "and/ or" the Chief Juvenile Probation Officer, Amador Rodriguez, establishes the official policy of the County with respect to training of detention center employees. For this instruction to be correct, we must find that both the Juvenile Board and Rodriguez are policymakers for Cameron County. First we

shall examine whether the Juvenile Board is a policymaker for Cameron County.

> b. The Juvenile Board: County or State Entity?

■ The County concedes that the Juvenile Board establishes the official policy for the detention center. Additionally, state law supports the conclusion that the Juvenile Board possesses authority to establish official policy for the detention center. *See* Tex. Hum.Res.Code Ann. § 152.0372 [6]; *see also* Tex.Rev.Civ.Stat.Ann. art. 5142c (providing that the juvenile board "shall have direction and control over all Juvenile Officers and may make rules and regulations relating thereto" and providing that juvenile boards in counties the size of Cameron County shall control and supervise "all homes, schools, farms, and any and all other institutions or places of housing maintained and used chiefly by the county for the training, education, and support or correction of juveniles").

However, Cameron County argues that the official policy established by the Juvenile Board for the detention center is not Cameron County's policy, but the policy of the State of Texas, because the Juvenile Board is an agency of the State, and not a county entity. Therefore, we must determine whether the Juvenile Board is an agency of the State of Texas or of Cameron County. If we conclude that the Juvenile Board is an agency of Cameron County, then we shall also conclude that the Juvenile Board established official policy for the detention center on behalf of Cameron County, and thus that the district court did not err in instructing the jury that the Juvenile Board was a policymaker for Cameron County.

Whether a particular governmental body is a state or local entity is a question usually addressed in the context of determining Eleventh Amendment immunity. *See, e.g., Minton v. St. Bernard Parish Sch. Bd.,* 803 F.2d 129, 131 (5th Cir.1986); *Clark v. Tarrant County,* 798 F.2d 736, 744 (5th Cir.

---

**6.** The statutory scheme governing the Juvenile Board and county juvenile boards generally has existed in at least three formulations—as precodification statutes and in two codifications, as chapter 75 of the Human Resources Code and, currently, as chapters 142 and 152 of the Human Resources Code. We shall cite to the current law when it has not changed in substance from the law in effect in June 1988, when Juan was killed, as well as to the law in effect at that time.

1986). To draw this distinction, "we must examine the particular entity in question and its powers and characteristics as created by state law...." *Minton,* 803 F.2d at 131 (internal quotations and citations omitted). We consider the following relevant factors:

> (1) whether state law views the entity as an arm of the state; (2) the source of the entity's funding; (3) the degree of local autonomy retained; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has the authority to sue and be sued in its own name; and (6) whether the entity retains the right to hold and use property.

*Stem v. Ahearn,* 908 F.2d 1, 4 (5th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991); *see Clark,* 798 F.2d at 744–45.

Analyzing the Juvenile Board in light of these factors, we conclude that it is a county agency rather than an arm of the State of Texas. First, Texas law appears to view county juvenile boards as local rather than state entities. Chapter 141 of the Human Resources Code establishes the Texas Juvenile Probation Commission (the "Commission"), a state agency entirely separate from the Juvenile Board, and sets forth its purposes and responsibilities. By juxtaposing the Commission with county juvenile boards, chapter 141 suggests that juvenile boards are county agencies created as a means by which counties can provide juvenile probation services to their populations. A juvenile board is defined as "a body established by law to provide juvenile probation services to a county." Tex.Hum.Res.Code Ann. § 141.002 (formerly § 75.002). Section 141.041 (formerly § 75.062) provides that the Commission shall "assist counties in providing probation and juvenile detention services by encouraging the continued operation of county and multi-county juvenile boards...." Tex.Hum.Res. Code Ann. § 141.041. Similarly, section 141.043 mandates that the Commission shall provide training and assistance to local authorities, including counties, juvenile boards, and probation offices, to improve juvenile probation and detention services. Tex.Hum. Res.Code Ann. § 141.043 (formerly § 75.043).

Chapter 142 of the Human Resources Code provides general rules governing county juvenile boards that also suggest that the Texas legislature intended juvenile boards to be county rather than state entities. Section 142.002 and a precodification statute, Texas Revised Civil Statutes article 5142c, establish that a juvenile board may set salaries of probation officers with approval of the county Commissioners' Court. Tex.Hum.Res. Code Ann. § 142.002; Tex.Rev.Civ.Stat.Ann. art. 5142c § 2. These statutes also require approval of the Commissioners' Court for appointment or employment of probation officers and other personnel. *Id.* Although section 142.004 of the Human Resources Code states that juvenile probation personnel employed by a political subdivision of the State are state employees for purposes of chapter 104 of the Texas Civil Practices and Remedies Code (concerning tort liability limitations), Tex.Hum.Res.Code Ann. § 142.004, section 141.067 provides that "a juvenile probation officer whose jurisdiction covers only one county is considered to be an employee of that county." Tex.Hum.Res.Code Ann. § 141.067 (formerly § 75.065).

Additionally, the opinions of the Texas Attorney General and other Texas statutes referencing county juvenile boards suggest that they are local rather than state entities. The Texas Attorney General has determined that juvenile probation personnel are county employees for purposes of the wage and hours requirements of the Fair Labor Standards Act. Op.Tex. Att'y Gen. No. JM–410 (1985). The Texas Attorney General has also recognized a duty of the county attorney to represent and provide legal advice to the county juvenile board. Op.Tex. Att'y Gen. No. H–1133 (1978).[7] Additionally, the Texas Local Government Code identifies a county juvenile board as a "specialized local entity." Tex. Local Gov't Code Ann. § 140.003(a).

7. In fact, Rodriguez testified that he and the Cameron County Juvenile Board do rely on the Cameron County attorney for legal advice.

The statutes dealing more specifically with the Cameron County Juvenile Board also indicate that it is a county agency rather than an arm of the state. The Cameron County Juvenile Board is established by Texas Human Resources Code section 152.0371 and its predecessor statutes, articles 5139 and 5139B of the Texas Revised Civil Statutes. Tex.Hum.Res.Code Ann. § 152.0371; Tex.Rev.Civ.Stat.Ann. art. 5139 and 5139B. In 1988, the members of the Juvenile Board included the five state district judges who sit in Cameron County, and the county judge, the chief executive officer of Cameron County. Tex.Rev.Civ.Stat.Ann. art. 5139. Since that time, the two county-court-at-law judges in Cameron County have been added to the membership of the Juvenile Board. Tex. Hum.Res.Code.Ann. § 152.0371. The members of the Juvenile Board are paid an annual compensation by the Cameron County Commissioners' Court for their service on the Juvenile Board. *Id.;* Tex.Rev.Civ.Stat. Ann. art. 5139.

Section 152.0372 of the Texas Human Resources Code, and its predecessor statute, Texas Revised Civil Statutes article 5142c, describe the functions of the Cameron County Juvenile Board. Tex.Hum.Res.Code Ann. § 152.0372; Tex.Rev.Civ.Stat.Ann. art. 5142c §§ 7, 10 and 14. The Juvenile Board "controls and supervises each county facility used for the detention of juveniles." *Id.* The Juvenile Board may adopt rules and regulations relating to the welfare of juveniles in the county facility. *Id.* The Juvenile Board and its juvenile probation officers are entitled to legal representation by an attorney from the Cameron County district attorney's office. *Id.* Therefore, we conclude that the first relevant factor, whether state law perceives the Juvenile Board as a county or state entity, weighs in favor of the conclusion that the Juvenile Board is a county agency.

The second relevant factor in determining whether a particular governmental body is a state or a county entity is the source of the entity's funding. Rodriguez testified at trial that the Juvenile Board receives funds from three sources: allocations by the Cameron County Commissioners' Court, state aid from the Commission, and state grants from the

Texas Department of Criminal Justice. Several witnesses testified that two thirds or seventy percent of the Juvenile Board's funding is provided by the County. The state funding for the Juvenile Board is paid to the county auditor of Cameron County, who then disburses the funds to the Juvenile Board as part of its budget. The Cameron County Commissioners' Court and the county budget officer prepare the annual operating budget of Cameron County, including the Juvenile Board's budget within the general budget category of law enforcement, although the Juvenile Board prepares a budget proposal which is considered by the county officials in determining the budget. Although the source of funding is not dispositive, the fact that the bulk of the Juvenile Board's funding is provided by Cameron County rather than the State is persuasive evidence that the Juvenile Board is a county agency.

The third relevant factor is the degree of local autonomy retained by the entity. The Texas Juvenile Probation Commission sets minimum standards for the operation of juvenile detention facilities with which the Juvenile Board must comply. Tex.Hum.Res.Code Ann. § 141.042 (formerly § 75.041). The Juvenile Board is also required by law to provide financial and statistical records to the Commission when requested, and the law allows the Commission to inspect and evaluate the Juvenile Board and audit its financial records. Tex.Hum.Res.Code Ann. §§ 141.044 (formerly § 75.044) and 141.046 (formerly § 75.047(a)). However, the only penalty for the Juvenile Board's non-compliance with these standards and regulations is the withdrawal by the Commission of state financial aid. *See* Tex.Hum.Res.Code Ann. § 141.085 (formerly § 75.068). Because state aid from the Commission and state grants from the Texas Department of Corrections together make up only 30% of the Juvenile Board's budget, it is possible that the Juvenile Board could continue to provide probation services and operate the detention center although it failed to comply with or disregarded the Commission's standards. Additionally, the standards set by the Commission are minimum standards; the Juvenile Board may set higher standards for the operation of the Cameron County Juvenile

**267**

Detention Center. Therefore, we conclude that the degree of local autonomy retained by the Juvenile Board weighs in favor of viewing the Juvenile Board as a county entity.

The fourth factor to be considered is whether the entity is concerned primarily with local, as opposed to statewide, problems. The County relies heavily on Texas Human Resources Code section 141.001 in support of its argument that the Juvenile Board is a state entity, contending that this statute establishes that the Juvenile Board is concerned primarily with statewide problems. Section 141.001 provides:

> The purposes of *this chapter* are to: (1) make probation services available to juveniles throughout the state; (2) improve the effectiveness of juvenile probation services; (3) provide alternatives to the commitment of juveniles by providing financial aid *to juvenile boards* to establish and improve probation services; (4) establish uniform probation administration standards; and (5) improve communications among state and local entities within the juvenile justice system.

Tex.Hum.Res.Code Ann. § 141.001 (emphasis added). "This chapter" refers to Chapter 141 of the Texas Human Resources Code, entitled Texas Juvenile Probation Commission, which concerns the establishment and formation of the Commission and its powers and duties. While section 141.001 most certainly supports the conclusion that the Commission is primarily concerned with a statewide problem of improving juvenile services, the Commission is not the entity whose character we are trying to discern.

The Cameron County Juvenile Board is established by section 152.0371 of the Texas Human Resources Code, in chapter 152, entitled Juvenile Boards, and its predecessor statutes, to provide juvenile probation services to Cameron County. Tex.Hum.Res. Code Ann. § 152.0371; Tex.Rev.Civ.Stat. Ann. arts. 5139, 5139B. Section 142.001 and its predecessor statute define juvenile probation services to include "services provided by a juvenile probation department that [are] related to the operation of a juvenile detention facility." Tex.Hum.Res.Code Ann.

§ 142.001(2); Tex.Rev.Civ.Stat.Ann. art. 5138d. The Juvenile Board maintains a detention center in Cameron County, provides supervision to juvenile detainees in that center and probation services to juvenile offenders in Cameron County. We conclude that the Juvenile Board is concerned primarily with local problems, namely, the provision of juvenile probation services to the inhabitants of Cameron County.

Neither the statutory scheme nor the evidence presented in this case clarifies whether the Juvenile Board has the authority to sue or be sued in its own name or whether it retains the right to hold and use property, the fifth and sixth factors of the test. We have concluded that the first, second, third, and fourth factors suggest that the Juvenile Board is a county entity. Several miscellaneous facts also weigh in favor of finding the Juvenile Board to be a county agency. Cameron County built, owns and maintains the physical plant of the detention center run by the Juvenile Board. Also, Cameron County contracts with other counties to house their juvenile offenders in the detention center. The Cameron County Commissioners' Court approves these contracts. The other counties pay Cameron County for this service and the fees are deposited into the County's general fund. The Cameron County Juvenile Detention Center personnel standards identify the detention center personnel as county employees.

The district court conducted this county/state entity analysis in addressing the Juvenile Board's pre-trial motion for dismissal on grounds of Eleventh Amendment immunity. Relying heavily on *Clark v. Tarrant County,* 798 F.2d 736 (5th Cir.1986), the court concluded that, because the Juvenile Board was analogous to the Adult Probation Department granted Eleventh Amendment immunity in *Clark,* the Juvenile Board was also a state entity entitled to Eleventh Amendment immunity. Accordingly, the district court dismissed Flores's claims against the Juvenile Board.

In *Clark,* we considered the question whether the Tarrant County Adult Probation Department was "an arm of the state such that under the Eleventh Amendment there is

a lack of subject matter jurisdiction over the section 1983 claims against it." 798 F.2d at 739. After examining the statutory structure governing the Adult Probation Department, Tex.Code Crim.Proc.Ann. art. 42.12, and considering the six relevant factors, we concluded that the Adult Probation Department was an arm of the state entitled to Eleventh Amendment Immunity. *Id.* at 744–45. We consider *Clark* to be distinguishable for several reasons.

First, we note that analogies between like entities cannot replace consideration of the six relevant factors. *See McDonald v. Board of Mississippi Levee Commissioners,* 832 F.2d 901, 908 (5th Cir.1987) (rejecting the Levee Board's argument that because it performed functions similar to those of the Mississippi State Highway Department, which has Eleventh Amendment immunity, it should also be immune, by stating that "such sweeping comparisons cannot substitute for a careful examination of the entity at issue").

Second, although on first impression an adult probation department and a juvenile probation department appear identical, under Texas law, the two entities serve different functions and are governed by different statutory schemes. *See* Tex.Code Crim.Proc. Ann. art. 42.12; Tex.Hum.Res.Code Ann. chs. 142, 152. The Juvenile Board, like all county juvenile boards, provides juvenile probation services to a county. Tex.Hum.Res. Code Ann. § 152.0372. Juvenile probation services are statutorily defined to include not only traditional probation services for adjudicated offenders, but also the operation of juvenile detention centers. Tex.Hum.Res. Code Ann. § 142.001. Adult probation departments provide only traditional probation services—i.e., adult probation officers, under the supervision of the district courts, assist adult offenders in complying with conditions and sanctions set by a court as punishment. *See* Tex.Code Crim.Proc.Ann. art. 42.12 § 2. Therefore, county juvenile boards perform the functions of both adult probation departments and the county jails with respect to juveniles.

Third, the factors supporting the finding in *Clark* that the Adult Probation Department is a state entity simply do not exist in relation to the Juvenile Board. In *Clark,* we relied on the Texas Attorney General's opinions that the legislature intended article 42.12 to give control of adult probation departments to state judicial districts and that adult probation officers are state employees. *Id.* at 744. As noted above, the Texas Attorney General considers juvenile probation officers to be county employees. In analyzing the Adult Probation Department's sources of funding, we noted that it receives funds from the State and probationer's fees; notably, the Tarrant County Adult Probation Department considered in *Clark* received no funding from Tarrant County. *Id.* Whereas in *Clark* we recognized that the establishment of adult probation departments is tied to judicial districts, *id.,* the establishment of juvenile boards and specifically of the Cameron County Juvenile Board is tied to the County. *See* Tex.Hum.Res.Code Ann. § 152.0371; *see generally* Tex.Hum.Res.Code Ann. ch. 152. We noted in *Clark* that the statute governing adult probation departments does not require the County Commissioners' Court to approve the department's budget, *Clark,* 798 F.2d at 744–45; however, the evidence in this case demonstrated that the Cameron County Commissioners' Court and county budget officer prepare the Juvenile Board's annual budget. Additionally, we note that the express statutory language of article 42.12, governing adult probation departments, provides that its purpose is to "place wholly within the state courts" the responsibility for formulating and supervising adult probation. Tex. Code Crim.Proc.Ann. art. 42.12 § 1. No comparable statutory expression of purpose exists in relation to county juvenile boards. For these reasons, we consider our analysis and decision in *Clark* to be distinguishable from the facts presented in this case. Accordingly, we conclude that the district court incorrectly relied on our decision in *Clark* in determining that the Juvenile Board is a state agency entitled to Eleventh Amendment immunity and incorrectly dismissed Flores's claims against the Juvenile Board.[8]

---

8. Flores recognizes that her claims against the Juvenile Board are redundant of her claims against Cameron County.

Considering the characteristics of the Juvenile Board under state law and all of the relevant factors, we conclude that the Juvenile Board is a county agency rather than an arm of the state. As such, the Juvenile Board formulates policy for the detention center on behalf of Cameron County. Therefore, the district court did not err in instructing the jury that the Juvenile Board was a policymaker for Cameron County.

### c. Is Rodriguez a Policymaker for the County?

The district court instructed the jury that the Cameron County Juvenile Board "and/or" Amador Rodriguez, the Chief Probation Officer and supervisor of the detention center, are policymakers for Cameron County. For this instruction to be correct, both the Juvenile Board and Rodriguez must have policymaking authority for the County with respect to the establishment of personnel training policies at the detention center. Cameron County argues that even if the Juvenile Board exercises policymaking authority on behalf of the County, Rodriguez is not a policymaker. Flores responds that Rodriguez established the detention center's policy with respect to training of personnel, and that the Juvenile Board had delegated policymaking authority with respect to training of personnel to Rodriguez.

The Supreme Court has stated that official policymaking authority "may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority." *Pembaur*, 475 U.S. at 483, 106 S.Ct. at 1300. As we determined above, state law provides that the Juvenile Board possesses the authority to establish Cameron County's official policies with respect to the detention center. Our task here is to determine whether the Juvenile Board has delegated that authority to Rodriguez, at least with respect to the training of detention center personnel.

■ "Special difficulties can arise when it is contended that a municipal policymaker has delegated his policymaking authority to another official." *Praprotnik*, 485 U.S. at 126, 108 S.Ct. at 926. "The authority to make municipal policy is necessarily the authority to make final policy." *Id.* at 127, 108 S.Ct. at 926. The fact that a municipal employee exercises discretion in making decisions is not enough to establish policymaking authority. *Id.* at 126, 108 S.Ct. at 925. Furthermore, the fact that the official policymaker simply goes along with a subordinate's discretionary decisions is not a delegation of policymaking authority. *Id.* at 130, 108 S.Ct. at 928. The Supreme Court has precluded the possibility of finding a county employee to possess "de facto policymaking authority." *See id.* at 131, 108 S.Ct. at 928 (stating that "except perhaps as a step towards overruling *Monell* and adopting the doctrine of *respondeat superior,* ad hoc searches for officials possessing such '*de facto*' authority would serve primarily to foster needless unpredictability in the application of § 1983").

However, a different situation arises where "a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker." *Id.* at 130, 108 S.Ct. at 928. Also, a series of decisions by a subordinate official could constitute a "custom or usage" of which the supervisor must have been aware. *Id.* In either situation, "the supervisor could realistically be deemed to have adopted a policy that happened to have been formulated or initiated by a lower ranking official." *Id.*

■ Although the record contains some evidence that Rodriguez actually established the detention center's policies with respect to training of its employees, there is insufficient evidence to support the conclusion that the Juvenile Board delegated official policymaking authority to Rodriguez. Rodriguez testified that the Juvenile Board had given him full authority to establish training programs. However, Rodriguez also testified that he maintained almost daily contact with Judge Garza, the chairperson of the Juvenile Board. Judge Garza testified that the Juvenile Board sets the general policy for the Cameron County juvenile department. He stated that the full Juvenile Board met rarely, if at all, and that the other members of the Juvenile Board relied on him to establish policy regarding the operation of the detention center. Judge Garza testified that he in turn

relied on Rodriguez to formulate the Cameron County Juvenile Probation Department's policies and procedures, but that he and Rodriguez would discuss these policies before they were published to the staff of the detention center. Judge Garza testified that he delegated virtually everything related to the detention center to Rodriguez. Judge Garza's general lack of knowledge about the detention center's training policies further indicates that, in fact, Rodriguez set the official policy regarding training of personnel. However, at most, this evidence supports the impermissible conclusion that Rodriguez was a "de facto" policymaker for the County. *See Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir.1993) (recognizing the Supreme Court's rejection of "de facto final policymaking authority"). The evidence does not support the conclusion that the Juvenile Board delegated final policymaking authority to Rodriguez. Accordingly, we conclude that the district court erred in instructing the jury that Rodriguez established final official policy for which Cameron County could be held liable.

■ Because the district court's instruction allowed the jury to base Cameron County's liability on policy established either by the Juvenile Board or Rodriguez or both, we cannot conclude that the challenged instruction could not have affected the outcome of the case. *See Mijalis*, 15 F.3d at 1318. Therefore, we must reverse and remand for a new trial to determine whether Cameron County had a deliberately indifferent policy of failing to train its detention center guards which caused Juan's death. On remand, the district court should instruct the jury that the Juvenile Board is the official policymaker for Cameron County with respect to the establishment of personnel training policies at the detention center.

Next we shall address Cameron County's remaining challenges to the jury instructions.

**2. The Excessive Force Standard**

Cameron County argues that the district court instructed the jury incorrectly regarding the standard for determining whether Betancourt and Ramirez violated Juan's constitutional rights by using excessive force.[9] The jury found that both Betancourt and Ramirez used excessive force against Juan, and that Betancourt's use of excessive force proximately caused Juan's death. Based on this finding, the district court entered judgment against Betancourt and in favor of Ramirez. Neither Betancourt nor Ramirez appeals. Therefore, the judgment against Betancourt, based on the finding of the use of excessive force, is unchallenged and remains in effect.

**3. The Deliberate Indifference Instruction**

■ Cameron County next argues that the district court erred in failing to submit its proposed interrogatory on county liability for failure to train, contending that the interrogatory used by the court did not require the jury to find deliberate indifference. We note first that Cameron County did not object to the district court's instructions or interrogatories on county liability, so we need not review this challenge. Nevertheless, we conclude that the district court did not abuse its discretion in failing to use Cameron County's proposed interrogatory No. 4.

Cameron County's proposed interrogatory No. 4 asked:

> Did Plaintiff prove by a preponderance of the evidence that Cameron County Commissioners Court or some policy making official to whom the Commissioners Court had delegated authority made a conscious choice, or was deliberately indifferent in establishing a custom or policy on behalf of Cameron County, Texas, which caused a deprivation of Juan Manuel Castillo–Flores' federally guaranteed constitutional rights?

**9.** The district court derived the instruction concerning the excessive force standard almost verbatim from Cameron County's proposed jury instructions and special interrogatories. Furthermore, Cameron County did not object to this instruction. Therefore, the invited error doctrine ordinarily would preclude our review of this instruction. *See Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 753 (5th Cir. 1993); *United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 606 (5th Cir.1991); *United States v. Gray*, 626 F.2d 494, 501 (5th Cir.1980).

The district court's charge asked whether Cameron County, through its policy making officials, "had a settled custom and/or policy of failing to adequately train its juvenile detention center officers," which "proximately caused [Juan's] death." The district court additionally instructed the jury as follows:

> The inadequacy of detention officers' training and supervision may serve as the basis for liability only where the failure to train or supervise in a relevant respect amounts to deliberate indifference to the constitutional rights of persons with whom the officers come in contact. Only where a failure to train reflects a deliberate or conscious choice by the county can the failure be properly thought of as an actionable county policy.

Because the district court's instructions as a whole adequately advised the jury of the necessity to find a deliberately indifferent policy of failing to train before holding Cameron County liable, we conclude that the district court did not abuse its discretion in failing to use Cameron County's proposed interrogatory No. 4. *See City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989) (holding that municipal liability for a failure to adequately train may only be found where the failure to train is deliberately indifferent—i.e., "where the failure to train reflects a deliberate and conscious choice").

#### 4. Damages for Flores's Personal Injuries

█ Cameron County also contends that the district court erred in submitting an interrogatory requesting damages for Flores's mental pain and suffering and lost support and services, because Flores only sued for violation of her son's constitutional rights and failed to allege damages in her own right. However, Flores's amended complaint clearly requests recovery for the "mental anguish and suffering and loss of companionship, contribution, society, affection and comfort which [Juan] would have furnished his parent had he lived." We have consistently held that a parent may recover damages analogous to state law wrongful death damages in

a § 1983 action based on the violation of her child's civil rights. *See, e.g., Rhyne v. Henderson County*, 973 F.2d 386, 391 (5th Cir.1992). Therefore, the County's argument is without merit.

### B. THE STATUTE OF LIMITATIONS

Because Cameron County's arguments concerning the application of the statute of limitations would affect further proceedings on remand in this case, we shall address them here. Cameron County contends that all claims made on behalf of Juan's estate are barred by the statute of limitations. The County argues that Flores did not allege a survival claim on behalf of Juan's estate in her original or amended complaint. Furthermore, the County argues that Flores did not have capacity to bring suit on behalf of the estate under Texas law because she was neither Juan's sole heir nor the administrator of his estate either at the time she filed her complaint or at any time before the expiration of the limitations period.

Flores responds that her original and amended complaint alleged survival claims on behalf of Juan's estate. She claims that her appointment as administrator of the estate was an amendment to the complaint which relates back to the date of filing of the original complaint under Federal Rule of Civil Procedure 15(c).

█ Because Congress has not provided a statute of limitations for civil rights actions brought under § 1983, federal courts adopt the forum state's general personal injury limitations period. *Owens v. Okure*, 488 U.S. 235, 249–50, 109 S.Ct. 573, 581–82, 102 L.Ed.2d 594 (1989); *Piotrowski v. City of Houston*, 51 F.3d 512, 514 n. 5 (5th Cir.1995). In Texas, the pertinent limitations period is two years. Tex.Civ.Prac. & Rem.Code Ann. § 16.003(a) (Vernon 1986); *Piotrowski*, 51 F.3d at 514 n. 5; *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir.1992). Texas law also provides that the death of a person who may bring a cause of action suspends the running of the statute of limitations for one year. Tex.Civ.Prac. & Rem.Code Ann. § 16.062

(Vernon 1986).[10]

Juan's death occurred, and therefore his estate's § 1983 action accrued, on June 2, 1988. Thus, the statute of limitations expired at the latest on June 2, 1991. Flores filed her original complaint on October 21, 1988. Although the original complaint did not expressly state that Flores was suing in her representative capacity on behalf of Juan's estate, the complaint, as well as the October 29, 1989 amended complaint, alleged that a violation of Juan's constitutional rights at the detention center caused his death, and requested damages for Juan's conscious pain and suffering prior to his death.[11] These allegations were sufficient to allege a survival action on behalf of Juan's estate. See Felan v. Ramos, 857 S.W.2d 113, 118 (Tex.App.— Corpus Christi 1993, writ denied) ("The actionable wrong in a survival action is that which the decedent suffered before death. The damages recoverable are those which the decedent sustained while alive." (citations omitted)). Therefore, we reject Cameron County's argument that the original complaint did not allege a § 1983 claim for Juan's survival damages.

■ Additionally, Cameron County contends that Flores did not have capacity to bring a survival suit on behalf of the estate. The Texas survival statute provides that "a personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person." Tex.Civ.Prac. & Rem.Code Ann. § 71.021 (Vernon 1986). Cameron County argues that Texas law requires a survival action to be brought by either all heirs of the decedent or the administrator of the decedent's estate. Cameron County claims that Flores could not bring a survival action on behalf of the estate because when the complaint was filed, she was neither the sole heir (because Juan's father was living) nor the administrator of the estate. We need not decide whether Texas law

requires the joinder of all heirs to bring a survival action because we conclude that Flores was administrator of Juan's estate.

Flores applied to be and was appointed temporary administrator of Juan's estate on February 11, 1994, and filed a notice of her appointment as temporary administrator with the district court on February 14, 1994. After trial, the district court granted Flores leave to amend her pleadings to show her representative capacity as temporary administrator of Juan's estate. We shall construe the February 14, 1994 filing with the district court of the notice of Flores's appointment as administrator as the amendment of Flores's complaint allowed by the district court. See Greenblatt v. Delta Plumbing & Heating Corp., 68 F.3d 561, 569 (2d Cir.1995) (noting that court of appeals has discretionary power under certain circumstances to deem pleadings amended); cf. Molett v. Penrod Drilling Co., 872 F.2d 1221, 1228 (5th Cir.) (allowing pleading amendments on appeal to allege diversity jurisdiction where such jurisdiction is clear from the record), cert. denied, 493 U.S. 1003, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989). If the amendment relates back to the date of the original complaint, then the estate's survival action is not barred by the statute of limitations.

Federal Rule of Civil Procedure 15(c) provides that "an amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading...." Fed.R.Civ.P. 15(c). "The rationale of the rule is that, once litigation involving a particular transaction has been instituted, the parties should not be protected [by the statute of limitations] from later asserted claims that arose out of the same conduct set forth in the original pleadings." Kansa Reinsurance Co. v. Congressional

---

10. In § 1983 actions, we apply state tolling provisions to determine whether the limitations period has expired. Pete v. Metcalfe, 8 F.3d 214, 217 (5th Cir.1993).

11. The complaints alleged:
 [Juan] experienced conscience [sic] pain and suffering for which he would be entitled to

recover from the defendants, both actual as well as exemplary damages, had he lived. The federal and state causes of action for these damages survived and upon his death, accrued to his heirs at law under Chapter 71 of the Texas Civil Practices and Remedies Code [establishing a survival cause of action].

*Mortgage Corp.,* 20 F.3d 1362, 1366–67 (5th Cir.1994) (citing 6A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure § 1496 (1990)).

"[I]f a plaintiff seeks to correct a technical difficulty, state a new legal theory of relief, or amplify the facts alleged in a prior complaint, then relation back is allowed." *F.D.I.C. v. Conner,* 20 F.3d 1376, 1386 (5th Cir.1994). "Notice is the critical element involved in Rule 15(c) determinations." *Williams v. United States,* 405 F.2d 234, 236 (5th Cir.1968). We have previously allowed relation back of amendments that change the capacity in which the plaintiff brings suit, for example, from her individual capacity to her representative capacity as administrator of an estate. *Tidewater Marine Towing, Inc. v. Dow Chem. Co.,* 689 F.2d 1251, 1253–54 (5th Cir.1982) (noting that substitution of the personal representative of an estate for the surviving parent of the decedent as plaintiff is not the commencement of a new suit and allowing relation back of the amended complaint); *Williams,* 405 F.2d at 239 (allowing mother, who brought suit as next friend for minor son who had suffered personal injuries, to amend complaint to allege claim on her own behalf as parent, and holding that amended complaint relates back to date of original complaint); *Longbottom v. Swaby,* 397 F.2d 45, 48 (5th Cir.1968); *see also Missouri, Kansas & Texas Ry. Co. v. Wulf,* 226 U.S. 570, 573–74, 33 S.Ct. 135, 136–37, 57 L.Ed. 355 (1913) (holding that district court may allow amendment of complaint by plaintiff who sued in her individual capacity to allege claim in her representative capacity as administratrix of estate; amendment was not equivalent to commencement of a new action so as to subject it to the statute of limitations).

■■■■ Applying Rule 15(c) to the present case, we find that the estate's claim for survival damages arises out of the same events and conduct which were described in the original complaint. Additionally, although *Flores* may not have had the capacity to bring suit on behalf of the estate at the time, the original complaint alleged a survival action and requested survival damages, notifying Cameron County that it would be required to defend against such an action. The amendment to the complaint merely "seeks to correct a technical difficulty" with the original complaint—to formally allege that Flores seeks damages in her representative capacity as administrator of Juan's estate. *See Conner,* 20 F.3d at 1386. The purposes of Rule 15(c) are satisfied by allowing Flores's appointment as temporary administrator to relate back to the filing of the original complaint. We hold that Flores's amendment to her complaint stating her status as temporary administrator of Juan's estate relates back to the filing of her original complaint. Therefore, the § 1983 claims for survival damages asserted by Flores on behalf of Juan's estate are not barred by the statute of limitations.[12]

## III. CONCLUSION

For the foregoing reasons, we VACATE the judgment of the district court against Cameron County and REMAND for further proceedings consistent with this opinion. We DISMISS Flores's cross-appeal against the following individual defendants: the Estate of the Honorable Jack Goolsby; D.J. Lerma; Mike P. Cortinas, Jr.; Adolph Phomae, Jr.; Natividad Valencia; Judge Robert Garza; Judge Gilberto Hinojosa; Judge Darrell B. Hester; Judge Jane Akin Brasch; Judge Rogelio Valdez; Armando Rodriguez; and Thelma Gonzalez Sullivan. Costs shall be borne by Flores.

---

**12.** Cameron County also argues that the district court erred in admitting into evidence Plaintiff's Exhibit 20—the detention center log books for June 19, 1987 through July 1, 1987, which recorded that Juan suffered a bleeding rectum during a previous incarceration in the detention center and suggested that his injury possibly resulted from sexual abuse. The district court admitted Exhibit 20 under the rule of optional completeness after Cameron County, over the district court's warning that it would apply Rule 106, offered into evidence Defendant's Exhibits 37, 38, and 39—all other log books covering Juan's stays at the detention center. We conclude that this ruling was not an abuse of discretion. *See* Fed.R.Evid. 106; *Beech Aircraft v. Rainey,* 488 U.S. 153, 172, 109 S.Ct. 439, 451, 102 L.Ed.2d 445 (1988).