# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 10, 2013

No. 12-50568
Summary Calendar

Lyle W. Cayce
Clerk

SHIRLEY RAYMOND,

Plaintiff-Appellant

v.

ECTOR COUNTY, TEXAS,

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:11-cv-00035-RAJ

Before JOLLY, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:[*]

In this case, Appellant Shirley Raymond appeals the district court's grant of summary judgment in favor of Appellee Ector County on Raymond's 42 U.S.C. § 1983 claim alleging that the County violated her First Amendment right of freedom of association. We find that the district court did not err in finding no evidence of a policy or custom giving rise to § 1983 municipal liability and, accordingly, we affirm the district court's judgment.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50568

FACTUAL AND PROCEDURAL BACKGROUND

Raymond began working as a juvenile probation officer for the Ector County Youth Center ("the Center") in 1998. In October 2009, Raymond married Carl Raymond, who had been convicted of sexual misconduct involving a fifteen-year-old girl in 2005. At the time of their marriage, Raymond knew that her husband was required to register as a sex offender because of his 2005 conviction. After their marriage, Raymond allowed her husband to enter the Center on at least three occasions without notifying her employer that Mr. Raymond was on the premises or that Mr. Raymond was a registered sex offender. Although Raymond alleges that her husband had no contact with any juveniles at the Center, Louis Serrano, Director of Juvenile Services for Ector County, testified that he had observed Mr. Raymond unaccompanied at the Center on two occasions.

After learning of Mr. Raymond's sex offender status through an annual review of sex offenders' places of residence, Serrano met with Raymond on March 3, 2010 to discuss her husband. During the meeting, Raymond admitted that she was aware of Mr. Raymond's sex offender status. On March 5, 2010, after consultation with the Center's assistant director and Raymond's direct supervisor, Serrano terminated Raymond's employment. According to Serrano, the decision to fire Raymond was based on her poor professional judgment in allowing a sex offender into the Center and Serrano's belief that such judgment presented a risk to the Center's juveniles.

Raymond filed suit against the County under § 1983, alleging that the County terminated her employment in retaliation for exercising her First Amendment right to associate with her husband.[1]  On March 19, 2012, the

---

[1] In addition to her First Amendment claim, Raymond alleged age discrimination and a Fourteenth Amendment substantive due process violation. Raymond does not appeal the district court's grant of summary judgment on her age discrimination claim. With respect to

2

No. 12-50568

County moved for summary judgment on Raymond's claims and the district court granted the motion on May 15. This timely appeal followed.

STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo. *LeClerc v. Webb*, 419 F.3d 405, 413 (5th Cir. 2005). Summary judgment is appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Although the court views the evidence in the light most favorable to the non-moving party, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

ANALYSIS

A municipality may be held liable under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," causes a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Thus, to prevail in a § 1983 municipal liability claim, a plaintiff must show the following three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694).

---

the court's grant of summary judgment on her Fourteenth Amendment claim, Raymond summarily states that "[i]ndividual decisions in marriage, family relationships, procreation [sic] are protected liberty rights." Br. of Appellant 11. Even if this argument is sufficient to overcome a finding that Raymond has waived the issue on appeal, *see* FED. R. APP. P. 28(a), we agree with the district court that Raymond fails to allege facts that would give rise to a Fourteenth Amendment substantive due process violation. None of the County's alleged actions interfered with Raymond's "independence in making certain kinds of important decisions," such as, in this case, her decision to marry Mr. Raymond. *Zaffuto v. City of Hammond*, 308 F.3d 485, 489 n.4 (5th Cir. 2002) (quoting *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977)).

Because it requires an official policy promulgated by an authorized policymaker, "[m]unicipal liability cannot be sustained under a theory of *respondeat superior*." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003); *see also Flores v. Cameron Cnty.*, 92 F.3d 258, 263 (5th Cir. 1996) ("[A] local government may not be held liable under § 1983 for the unconstitutional acts of its non-policymaking employees . . . ."). To determine whether a municipal official is a policymaker, we look to state law to assess whether the official had "final policymaking authority" over the activity at issue. *McMillian v. Monroe Cnty.,* 520 U.S. 781, 786 (1997); *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993). Furthermore, "policymaking authority 'may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority.'" *Flores*, 92 F.3d at 269 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion)).

An "official policy" may arise either directly from an authorized policymaker's "statement, ordinance, regulation, or decision," or indirectly from a "persistent, widespread practice" of non-policymaking municipal employees that "is so common and well settled as to constitute a custom." *Bennett v. Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc) (per curiam). With respect to direct policymaker action, a single discretionary action taken by a policymaking official does not establish an official policy unless the official is "responsible for establishing final government policy" with respect to the discretionary action taken. *Brady v. Fort Bend Cnty.*, 145 F.3d 691, 699 (5th Cir. 1998) (quoting *Pembaur*, 475 U.S. at 483). With respect to official policy arising from custom, "[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom" and "[a] customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Piotrowski*, 237 F.3d at 581 (quotation marks omitted).

No. 12-50568

In this case, Raymond asserted that the County's alleged constitutional violation arose directly from the decision of an official policymaker, namely, Lou Serrano. *See* Pl. Compl. 4. Accordingly, the district court viewed Raymond's claim as asserting only direct policymaker action, rather than unauthorized custom.[2] Observing that Texas law dictates that the County's Juvenile Board, alone, is responsible for establishing county employment policies, the district court concluded that Serrano, "while apparently possessing discretion to hire and fire employees, was not a decision maker possessing final authority to establish municipal [employment] policy." R. 218 (citing 37 TEX. ADMIN. CODE § 341.3(a) ("The juvenile board shall adopt written personnel policies."); TEX. HUM. RES. CODE ANN. § 142.002(a) (describing authority of juvenile board to employ probation officers and other personnel); 37 TEX. ADMIN. CODE § 341.2(a)(2) ("The juvenile board shall specify the responsibilities and functions of the juvenile probation department as well as the authority, responsibility, and function of the position of the chief administrative officer.")).

We agree that, although Serrano had discretionary power to terminate Raymond's employment, the Juvenile Board retained final policymaking authority over employment policies, and Raymond failed to show that the Board delegated this authority to Serrano. *See Flores*, 92 F.3d at 269 (finding insufficient evidence that Juvenile Board delegated final policymaking authority over employee training to Chief Probation Officer because "discretion in making decisions is not enough to establish policymaking authority"); *see also Pembaur*, 475 U.S. at 484 n.12 (noting that employee with "discretion to hire and fire employees without also being the county official responsible for establishing county employment policy" does not trigger municipal liability through

---

[2] Furthermore, even if Raymond had argued the latter theory, she has failed to show any evidence that her termination resulted from a widespread unconstitutional practice, thus insulating the County from custom-based municipal liability. *See Piotrowski*, 237 F.3d at 581.

discretionary decisions).[3]   Thus, because Serrano's decision to terminate Raymond was not an official policy originating from an authorized policymaker, the district court did not err in holding that no genuine issue of material fact existed with respect to Raymond's § 1983 claim.

Because we conclude that Serrano was not a policymaker with respect to the County's employment policies, we need not reach the merits of Raymond's First Amendment freedom of association claim.  Moreover, even if Serrano were a policymaker, and even if his decision to terminate Raymond were an official policy, we find that the record, viewed in the light most favorable to Raymond, shows that Raymond's marital status was not the basis for her termination.  To prevail in her First Amendment retaliation claim, Raymond must show that "(1) [s]he suffered an adverse employment action, (2) [her] interest in 'associating' outweighed the [County's] interest in efficiency, and (3) [her] protected activity was a substantial or motivating factor in the adverse employment action." *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002).  Even if Raymond proves these three elements, the County can evade liability by showing, by a preponderance of the evidence, "that it would have taken the same action even in the absence of the protected conduct."  *Gerhart v. Hayes*, 217 F.3d 320, 321 (5th Cir. 2000) (citing *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is undisputed that Raymond, while working as a juvenile probation officer, allowed her husband, a registered sex offender previously convicted of criminal sexual conduct involving a fifteen-year-old girl, into the Center on at

---

[3] Cited by Raymond, this court's decision in *Van Ooteghem v. Gray*, which held that a county treasurer's dismissal of an employee was "official policy," is distinguishable from the present case because, under Texas law, the treasurer, as an elected official, had "complete authority for the hiring and firing of personnel within the Treasury," not merely discretionary authority constrained by the employment policies of a supervisory board.  628 F.2d 488, 495 (5th Cir. 1980), *vacated in part on other grounds*, 654 F.2d 304 (5th Cir. 1981); *see also Brady*, 145 F.3d at 699 (explaining that, because Texas sheriffs have unequivocal and unreviewable power under Texas law to fill employment positions, they are "not merely granted discretion to hire and fire employees," and, instead, have final policymaking authority).

No. 12-50568

least three occasions without notifying her supervisors of her husband's sex offender status or his presence in the Center.   R. 92, 104, 107–8.   Serrano claimed that the decision to terminate Raymond was based on 1) her poor professional judgment in bringing a registered sex offender into a youth facility and 2) the belief that Raymond's poor judgment could jeopardize the Center's "safe environment."  R. 83–84, 87–88.  Although she asserts on appeal that "[a] reasonable jury could find that Serrano used the marriage as a factor in [Raymond's] termination," Br. of Appellant 11, Raymond offers no evidence that her marriage, rather than her decision to allow her husband into the Center, was a "motivating factor" in her termination.   Furthermore, even if the record permits a reasonable juror to find that Raymond's marriage was a motivating factor, the evidence shows that, even if Raymond were *not* married to her husband, Serrano would have fired Raymond for allowing a sex offender into the Center on three occasions without notifying her supervisors.  *See, e.g.*, 37 TEX. ADMIN. CODE § 345.310(c)(1) ("Juvenile justice professionals shall . . . serve each child with concern for the child's welfare . . . .").  Accordingly, even if Serrano were an authorized policymaker, the absence of evidence in the record showing that Serrano terminated Raymond based on her marital status entitles the County to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.

AFFIRMED.